[Sac. No. 1941. Department One.—August 7, 1912.]

E. E. MARSHALL, Respondent, v. VALLEJO COMMERCIAL BANK (a Corporation), Defendant and Apellant; NEWTON–SANDFORD CONSTRUCTION COMPANY (a Corporation), Defendant and Respondent.

MECHANICS' LIENS—ABANDONMENT BY CONTRACTOR—COMPLETION OF WORK BY OWNER—AMOUNT AVAILABLE FOR LIENS.—Where a contractor for the making of certain alterations and additions to a building, abandoned the work before completion, and notice of cessation of labor was duly filed by the owner, which proceeded to complete the work itself, the rule for ascertaining the amount available for liens of persons other than the contractor was, prior to its repeal in 1911, that fixed by the provisions of section 1200 of the Code of Civil Procedure.

ID.—DETERMINATION OF VALUE OF WORK AND MATERIALS AT TIME OF ABANDONMENT—VALUE OF COMPLETED IMPROVEMENT.—The value of the work done and materials furnished at the time of the abandonment of the work, "estimated as near as may be by the standard of the whole contract price," as provided by that section, is to be determined by taking such proportion of the actual value of the work and materials done and furnished at the time of abandonment as the total contract price bore to the actual total reasonable cost of the complete improvement, the last mentioned figure being reached by adding to the actual value of the work done and materials furnished at the time of the abandonment, the reasonable cost of completing the building.

ID.—FINDING OF ULTIMATE FACT OF VALUE AT TIME OF ABANDONMENT. In an action to foreclose mechanics' liens, involving the determination of the amount available for liens after abandonment by the contractor and completion by the owner, it was not necessary to make a specific finding of the reasonable cost of completing the work

after the cessation of labor by the contractor. That was an evidentiary matter, and was included in the finding of the ultimate fact of the value of work done and materials furnished at the time of cessation, estimated as required by section 1200.

ID.—OWNER NOT ENTITLED TO ALLOWANCE FOR PREMATURE PAYMENTS.—Under such circumstances the owner is not entitled to an allowance for payments made to the contractor before they were due under the contract. All that he is entitled to deduct, under section 1200, is the sum of the payments *then due,* and actually paid *according to the terms* of the contract. And it is immaterial that such premature payments, under an agreement between the owner and the contractor, were made directly to subcontractors, materialmen, and laborers, and that a portion thereof came into the hands of the lien claimants.

ID.—PAYMENTS MADE PURSUANT TO ARCHITECT'S CERTIFICATES MAY BE PREMATURE.—A provision in the specifications that "payments will be made only on the certificate of the architect," was for the protection of the owner alone, but did not purport to make the certificate conclusive in favor of the owner or against lienors; and payments so made by the owner before they became due are to be regarded as premature, notwithstanding they were made pursuant to architects' certificates.

ID.—OWNER NOT ENTITLED TO ALLOWANCE FOR DAMAGES FOR DELAY.—Under section 1200, the owner was not entitled to deduct from the balance applicable to liens the damages suffered by it through the failure of the contractor to complete the building within the stipulated time.

APPEAL from a judgment of the Superior Court of Solano County and from an order refusing a new trial. A. J. Buckles, Judge.

The facts are stated in the opinion of the court.

Frederic W. Hall, for Appellant.

Jordan, Rowe & Brann, for Plaintiff and Respondent.

E. S. Page, for Defendant and Respondent.

SLOSS, J.—The plaintiff in his own right, and as assignee of the Coast Electric Company and of J. W. Mitchell, brought this action to foreclose three mechanics' liens upon the property of defendant Vallejo Commercial Bank in the city of Vallejo.

On the nineteenth day of August, 1907, the Vallejo Commercial Bank, as owner, entered into a written contract with Newton-Sandford Construction Company, as contractor, for the making of certain alterations and additions to a brick building owned by the bank. The contract price was $13,800. The validity of the contract, although questioned by the complaint, was declared by the findings, and is not now disputed.

The plaintiff and his assignors were subcontractors of the Newton-Sandford Company, and filed claims of lien for the following amounts: the plaintiff, $2,950; J. N. Mitchell, $393.77, and Coast Electric Company, $223.50. The propriety of these demands, as against the contractor, and the regularity of the steps to claim liens therefor, are not questioned. The only controversy is over the amount due from the owner, Vallejo Commercial Bank, and applicable to the satisfaction of these liens.

It appears that the contractor commenced performance of the contract, and continued until on or about January 28, 1908, when it ceased work. Notice of cessation of labor was duly filed by the owner, which proceeded to complete the work itself. The rule for ascertaining the amount available for liens of persons other than the contractor was, under this state of facts, to be fixed according to the provisions of section 1200 of the Code of Civil Procedure, which, though repealed in 1911 (Stats. 1911, p. 1319), was still in force at the time of the accrual of the rights asserted in this action.

The court found that at the time of the cessation of labor upon the building by the contractor, the value of the work done and materials furnished by the said contractor was the sum of $10,767.34, "estimated according to the standard of the said contract price," and that at said time there had been paid by the Vallejo Commercial Bank on account of said contract the sum of $8,800.51. Of said amount $892.86 was paid before the dates fixed by the contract for payment and $67.03 of this was paid in excess of progress payments, but all of said $892.86 was paid to subcontractors, materialmen, and laborers having contracts with the Newton-Sandford Construction Company, "and for that reason should now be allowed as a credit to defendant the Vallejo Commercial Bank." Deducting the sum of $8,800.51 from the sum of $10,767.34, the amount fixed as the value of the materials and labor furnished,

estimated according to the contract price, the court found the balance of $1,966.83 to be the amount owing from the bank. From this it deducted $560, the damage found to have been sustained by the bank through the failure of the contractor to complete the building within the agreed time. This left the sum of $1406.83 which the court, in its conclusions of law, found to be due from the bank, and applicable to the discharge of plaintiff's liens. A decree of foreclosure was entered accordingly. Thereafter, upon motion of the plaintiff, the court amended its conclusions of law and entered a new judgment. The second judgment was based upon the view that, in ascertaining the amount due from the bank, the premature payments of $892.86, and the damages claimed for delay, amounting to $560, should not have been deducted from the value of the materials furnished and labor done at the time when work on the building ceased. The result was to make the balance due from the appellant and applicable to the payment of liens $2,859.69, and the conclusions of law and the decree so declare.

The bank moved for a new trial, which was denied. It appeals from the order denying its said motion, and from the parts of the decree adjudging that the sum of $2,859.69, with interest and costs, is a lien upon its property, and ordering a sale to realize such sum.

The first point urged by the appellant is that the evidence is insufficient to sustain the finding that at the time of the cessation of labor the value of the work done and materials furnished "was the sum of $10,767.34, estimated according to the standard of the said contract price." This contention must be upheld. There is virtually no dispute in the evidence regarding the items which must be taken into account in computing the amount in question. The contract price was $13,800. The *actual* value of the labor done and materials furnished up to the time of cessation of labor was $10,767.34. The amount reasonably and necessarily expended in completing the building was $3,703.06. This made the total cost of the completed building $14,470.40. To this must be added the reasonable cost that would have been incurred in completing, according to the contract, two items of construction, one of which was altered by the substitution of a cheaper material and the other omitted from the building. Accordingly, the

value of the work done and materials furnished, "estimated as near as may be by the standard of the whole contract price," as provided by section 1200, was to be fixed by taking such proportion of the actual value of the work and materials done and furnished at the time of abandonment as the total contract price bore to the actual total reasonable cost of the complete improvement, the last mentioned figure being reached by "adding to the actual value of the work done and materials furnished at the time of the abandonment the reasonable cost of completing the building." (*Hoffman-Marks Co.* v. *Spires,* 154 Cal. 111, [97 Pac. 152].) Such computation would have resulted in the ascertainment of an amount considerably less than $10,767.34, which was the sum found by the court. This sum was the actual value of the labor and materials, and not the value estimated according to the standard of the contract price.

The alteration above referred to consisted in the substitution of metal for Spanish tile, reducing the actual cost by $225. A heating plant, called for by the contract, was not installed. The appellant claims that the reasonable value of installing this item would have been $375, but the respondent contends, and we think correctly, that there is no sufficient evidence to show this. But whether the cost of the heater be taken into account or not, the finding under discussion cannot stand. If we accept appellant's view on this point, a calculation, under the rule above stated, shows the value of labor done and materials furnished, estimated according to the standard of the contract price, to be $9,859.45, or $907.89 less than the amount found by the court. Omitting any consideration of the heater, the value of the labor and materials, thus estimated, would be $10,110.53, or $656.81 less than the amount found. The error cannot be rectified by modifying the judgment, as suggested in respondent's brief, for the reduction thus proposed is only $499.61, which is not sufficient to meet the requirements of the case. Upon a new trial there can be little difficulty in ascertaining the correct figure, and the court may then have before it sufficient data from which to determine and to take into account, the reasonable cost which would have been incurred in installing the heating plant according to the plans and specifications.

As a guide to the court below in its further proceedings the other points raised by appellant may be briefly discussed.

There was no occasion to make a specific finding of the reasonable cost of completing the work after the cessation of labor by the contractor. The ultimate fact was the value of work done and materials furnished at the time of cessation, estimated as required by section 1200. This was found. The cost of completion was a factor to be considered in finding the ultimate fact, but it was evidentiary merely.

The other points raised go, in the main, to the right of the owner to have allowance for payments made before they were due under the contract. We think the court rightly held, in its modified conclusions of law and second decree, that such payments were not to be considered. In cases where the contractor has failed to complete his contract, section 1200 supplies, or, rather, supplied the rule for ascertaining the amount applicable to the payment of liens of persons other than the contractor. From the value of the work done and materials furnished is to be deducted "the payments then due and actually paid, according to the terms of the contract and the provisions of section 1183 and 1184." Section 1184 provides that "no payment made prior to the time when the same is due, under the terms and conditions of the contract, shall be valid for the purpose of defeating, diminishing, or discharging any lien in favor of any person, except the contractor, but as to such liens, such payment shall be deemed as if not made, and shall be applicable to such liens, notwithstanding that the contractor to whom it was paid may thereafter abandon his contract. . . ." This language is plain, and leaves no room for a construction which would permit the owner to deduct from the balance applicable to the payment of liens under section 1200 the amount of payments prematurely made. What he is entitled to deduct is the sum of the payments *then due,* and actually paid *according to the terms of the contract.* The statute made a special rule for ascertaining, in cases of abandonment, the amount applicable to payment of liens. It fixed a standard for estimating the value of the work done and materials furnished, and the value, so measured, might be, as in this case it was, considerably less than the actual value. If the owner is to have the benefit of the contract in fixing the sum which shall represent the value to

him of the improvement, there is manifest justice in holding him to the terms of the contract when he seeks deductions for payments made to or for the contractor. And such is the express provision of the code.

The question is not affected by the fact that, under an agreement between the owner and the contractor, these payments were made directly to subcontractors, materialmen, and laborers. It is argued that these persons had a right, equal or superior to that of plaintiff, to share in the fund, and that payment to them could not have injured the plaintiff. But the validity of the claims so paid was not a subject of adjudication in this action, and, in any event, the plaintiff is entitled to stand upon the rights given him by the statute. Nor are these rights lessened by the fact that a part of the premature payments came to his own hands. He had no knowledge that the sums so paid were not yet payable as between the owner and the contractor, and he received no more than was due him. We see nothing inequitable in his retaining these amounts, and still insisting that, for the rest of his claim, he may look to the fund created for his benefit by section 1200. If the owner has to pay more than it contracted to pay, the result is due to its own failure to comply with its contract.

There is no merit in the contention that the payments under discussion are not to be regarded as premature because made pursuant to architects' certificates. The specifications provide that "payments will be made only on the certificate of the architect as per agreement in contract." The contract contains nothing upon the subject. This provision does not purport to make the certificate of the architect conclusive in favor of the owner or against lienors. It was for the protection of the owner alone (*McLaughlin* v. *Perkins,* 102 Cal. 502, [36 Pac. 839] and did not enable him to bind third parties by the act of his agent. Furthermore, the finding that $892.86 was paid before it became due under the contract is not assailed by the specifications of insufficiency of evidence.

It is contended that the bank was entitled to deduct from the balance applicable to liens the damages ($560) suffered by it through the failure of the contractor to complete the building within the stipulated time. The foregoing discussion with reference to the right to deduct premature payments in effect

answers this point.   Where the work is unfinished, the method of fixing the amount applicable to the payment of liens is fixed by section 1200, and a deduction for damages caused by delay is neither permitted by the section nor is it appropriate to the special scheme thereby provided to meet a special contingency.

The judgment and the order denying a new trial are reversed.

Angellotti, J., and Shaw, J., concurred.