[L. A. No. 4072.   In Bank.—December 15, 1915.]

ROYSTONE COMPANY (a Corporation), Respondent, v. THOMAS DARLING et al., Respondents; AMERICAN SURETY COMPANY OF NEW YORK (a Corporation), Appellant.

MECHANICS' LIENS—LIEN IN EXCESS OF CONTRACT PRICE—REGULATIONS AS TO CONTRACT.—Prior to the enactment of the act of May 1, 1911 (Stats. 1911, p. 1313), revising the mechanic's lien law, it was the established doctrine of this state that the legislature could not create mechanics' liens against real property in excess of the contract price, where there is a valid contract, but that it was within the legislative power, in order to protect and enforce the liens provided for in the constitution, and so far as for that purpose may be necessary, to make reasonable regulations of the mode of contracting, and even of the terms of such contract, and to declare that contracts shall be void if they do not conform to such regulations.

ID.—REVISORY ACT OF MAY 1, 1911, CONSTRUED.—The legislature did not intend by the revisory act of 1911, to depart from this doctrine, but, on the contrary, its design was to follow and to protect lienholders by means of regulations concerning the mode of contracting and dealing with property for the purposes of erecting improvements thereon.

ID.—CONTRACT PRICE LIMIT OF OWNER'S LIABILITY—FILING BOND AND CONTRACT.—The intent to make the contract price the limit of the owner's liability, where the bond and contract have been filed as required by section 1183 of the Code of Civil Procedure, as amended by said act, is plainly indicated by the provisions of that section declaring the intent and purpose "to limit the owner's liability, in all cases, to the measure of the contract price where he shall have

filed or caused to be filed in good faith with his original contract a valid bond" in the amount and upon the conditions provided therein.

ID.—FAILURE TO FILE BOND AND CONTRACT.—The statement in section 14 of the revisory act of 1911, that the act is intended to make the liens therein provided for "direct and independent of any account of indebtedness between the owner and contractor,"' is only applicable to liens in cases where the bond and contract are not filed.

ID.—EFFECT OF REVISORY ACT OF 1911 ON LIABILITY OF OWNER.—The effect of the revisory act is that persons contracting for the erection of buildings or structures on their property must require the contractor to furnish the bond required by section 1183, and must file the same with the contract in the recorder's office, or, as an alternative, he must see to it that the value of the work and materials used in the building by the contractor is paid to the persons who furnish the same. A contract not accompanied by such bond is not invalid, but it furnishes no protection to the owner against liens for labor and material on the building.

ID.—CONSTITUTIONAL RIGHT OF LIEN—REASONABLE REGULATIONS AS TO CONTRACT.—In view of the fact that the state constitution gives to workmen and materialmen a lien upon property for the value of the work and materials they bestow upon it, and directs the legislature to provide for the efficient enforcement of such liens, any legislative provision to that end which affords to the property owner a reasonable and practical mode of improving his property through a contractor at a fixed price and without further liability, should be considered as a legitimate exercise of the constitutional mandate.

ID.—REQUIREMENT FOR GIVING BOND — REASONABLENESS OF BURDEN— POLICE POWER. — The revisory act of 1911 does not deprive the owner of the right to contract for the improvement of his property. It allows him so to do upon such terms as he may deem for his best interests. It merely exacts from him, as a condition of exemption from liability beyond the contract price, and in order to make his contract effective, that he shall provide a reasonable security for the constitutional lien given for labor and materials furnished to his contractor. Such burden is not unreasonable, but is one which the people have the power to impose, and is within the scope of the constitutional mandate in the section conferring such liens, and of the police power.

ID.—PROVISION REQUIRING BOND IS CONSTITUTIONAL.—The provision of the act of 1911, requiring the giving of a bond to secure such liens, has a direct relation to the constitutional lien and to the effect of the contract for the improvement, and is not unconstitutional or invalid.

ID.—LACK OF UNIFORMITY IN ACT—CLASS LEGISLATION.—The provisions of the act requiring persons who make building contracts to file a bond, while no such requirement is made of any other person

who may wish to make other kinds of contracts, does not render the act invalid for lack of uniformity or class legislation.

ID.—CONSTITUTIONAL CLASSIFICATION—LEGISLATION AFFECTING BUILDING CONTRACTS.—The fact that the constitution confers upon persons performing labor or furnishing materials for the construction of a building the right to a lien thereon, at once establishes these persons as a class and makes a constitutional distinction between them and all other persons making contracts, and justifies legislation for their benefit and governing the conduct and contracts of the owner of the property and the person contracting to construct buildings thereon.

ID.—SURETY ON BOND—PENALTY—MEASURE OF SURETY'S LIABILITY.— The penalty of the bond required to be given by section 1183 is to be not less than one-half of the amount of the contract price, and this measures the extent of the obligation and the liability of the surety. The subsequent statement that after applying to the payment of liens the sum due from the owner to the contractor, the claimants may, in a suit on the bond, recover the unpaid balance of their claims, cannot be construed to authorize a recovery on the bond of more than the penal sum thereof. The fact that such suit may be joined with a suit to foreclose the liens does not make it any the less a suit on the bond.

APPEAL from a judgment of the Superior Court of Los Angeles County. Louis W. Myers, Judge.

The facts are stated in the opinion of the court.

Bicksler & Smith, and Bicksler, Smith & Parke, for Appellant.

Irwin, White & Rosecrans, and Randall & Bartlett, for Respondents Thomas Darling et al.

Ernest E. Nichols, for Respondent Joseph Musto Sons-Keenan Co.

R. L. Horton, for Respondent Hammond Lumber Co.

Gray, Barker & Bowen, for Respondent Schultz Lumber Co.

Shaw & Stewart, for Respondent J. R. Stead.

Willis O. Tyler, for Respondent N. E. James.

Schweitzer & Hutton, for Respondent Western Commercial Co.

Alfred Wright, for Respondent Eager Hardware and Paint Co.

C. W. Pendleton, Jr., for Respondents H. W. Johns-Manville Co. et al.

Jones & Weller, for Respondent Patten & Davies Lumber Co.

Arthur Wright, for Respondent Hughes Mfg. & Lumber Co.

Waterman & Green, for Respondent T. W. Neely.

SHAW, J.—This is an appeal taken from the judgment within sixty days after its entry, the American Surety Company being the sole appellant. The judgment was rendered in a consolidated action to foreclose mechanics' liens. Nineteen separate complaints embracing twenty-two claims of lien were included in the order of consolidation.

On June 19, 1912, the defendant Thomas Darling, being the owner of a lot in Santa Monica, Los Angeles County, entered into a contract with the defendant J. M. Thomas for the erection of an apartment house on said lot. The contract price was $13,279, payable in installments. Five of these installments of $1,659 each were payable at intervals during the construction of the building, the sixth, of the same amount, was to be paid at completion thereof, and the seventh, $3,320, was made payable thirty-five days after the filing of the notice of completion in the recorder's office. The remaining five dollars are not accounted for. On the twentieth day of June, the contractor, Thomas, and the appellant, American Surety Company, executed and delivered to Darling a bond in the sum of $6,640, being fifty cents in excess of one-half of said contract price. This bond conformed in every particular to the requirements of section 1183 of the Code of Civil Procedure, as amended in 1911. The contract and the bond aforesaid were duly filed and recorded in the office of the recorder of said county on June 21, 1912, the day after the execution of the bond. In pursuance of the contract,

CLXXI Cal.—34

Thomas immediately began the erection of the building and
completed it on December 14, 1912. Extra work of the value
of $183.50 was ordered by Darling and performed by Thomas.
On December 14, 1912, Darling filed in the recorder's office
a notice of completion as provided in section 1187 of the Code
of Civil Procedure. Prior to November 1, 1912, Darling paid
Thomas five installments, as provided in the contract, amount-
ing to $8,295. The remainder of the contract price, $4,984,
together with the value of the extra work, $183.50, a total of
$5,167.50, remains unpaid. The several claims of lien found
to be valid by the court amounted to something over ten thou-
sand dollars, being more than six thousand dollars in excess
of the balance due from the owner to the contractor as afore-
said.

The court below was of the opinion that said sum of
$5,167.50 due from Darling to Thomas on the contract was
applicable to these liens, and that liens should be declared
and enforced on defendant's property in favor of each claim-
ant for his *pro rata* share of this sum and for no greater
amount. Seven of these claimants were declared to have no
right to further relief except against the contractor. The
court held that the other fifteen claimants were each entitled
to a judgment against the American Surety Company upon
the bond aforesaid for the excess of their respective claims
over their respective shares of the fund due to the contractor
aforesaid. Judgment was given in accordance with these
conclusions.

As will be seen from the foregoing statement, the contract
between Darling and Thomas was made in 1912. The case
is, therefore, governed by the provisions of the mechanic's
lien law as revised by the act of May 1, 1911 (Stats. 1911,
p. 1313). This revision made some radical changes in the
law, and it presents new questions for decision. It will aid
in the understanding of the purpose and meaning of this act
if we call to mind, as briefly as may be, the history of the
mechanic's lien laws in this state and the state of the law on
the subject at the time the amendments in question were
enacted.

Prior to the adoption of the constitution of 1879 the lien
of mechanics and materialmen for work done and materials
furnished in the erection of buildings was entirely a creature
of the legislature. The former constitution contained no dec-

laration on the subject. Numerous decisions of the supreme court had declared that all such liens were limited by the contract between the owner and the contractor, and could not, in the aggregate, exceed the contract price. The doctrine that the right of contract could not be invaded by legislative acts purporting to give liens beyond the price fixed in the contract between the owner and the contractor, or regardless of the fact that the price had been wholly or partially paid, was so thoroughly established that litigation involving it had virtually ended. Section 1183 of the code, as amended in 1874, declared that every person performing labor or furnishing materials to be used in the construction of any building should have a lien upon the same for such work or material. It did not limit the liens to the contract price. In this condition of the law the constitution of 1879 was adopted. It provides as follows:

"Mechanics, materialmen, artisans, and laborers of every class shall have a lien upon the property upon which they have bestowed labor or furnished material, for the value of such labor done and material furnished; and the legislature shall provide, by law, for the speedy and efficient enforcement of such liens." (Art. XX, sec. 15.)

In 1880 section 1183 was again amended by inserting a direct declaration that "the lien shall not be affected by the fact that no money is due, or to become due, on any contract made by the owner with any other party." This amendment of 1880 first came before the supreme court for consideration in *Latson* v. *Nelson*, [2 Cal. Unrep. 199], 11 Pacific Coast Law J., p. 589, a case not officially reported. The court in that case considered the power of the legislature to disregard the contract of the owner with the contractor and give the laborer or materialman a lien for an amount in excess of the money due thereon from the owner to the contractor. In effect, it declared that section 15, article XX, of the constitution was not intended to impair the right to contract respecting property guaranteed by section 1, article I, thereof, and that the provisions of the code purporting to give a lien upon property in favor of third persons, in disregard of and exceeding the obligations of the owner concerning that property, was an invalid restriction of the liberty of contract. Although it is not very clearly stated, the theory of that decision is, and it has always been understood to be, that sec-

tion 1 of article I, declaring that all men possess "certain inalienable rights," among them the right of "acquiring, possessing, and protecting property," is a guaranty which includes the right to contract concerning the use, enjoyment, and disposition of property, and which cannot be ·taken away or restricted by the legislature, except by reasonable regulations made in the exercise of the police power. (See on this point, *Kellogg* v. *Howes,* 81 Cal. 177, [6 L. R. A. 588, 22 Pac. 509] ; *Stimson Mill Co.* v. *Braun,* 136 Cal. 125, [89 Am. St. Rep. 116, 57 L. R. A. 726, 68 Pac. 481].) *Latson* v. *Nelson* was approved and followed in *McCants* v. *Bush,* 70 Cal. 126, [11 Pac. 601] ; *Wiggins* v. *Bridge,* 70 Cal. 438, [11 Pac. 754], both decided in 1886, and in *Walsh·* v. *McMenomy,* 74 Cal. 359, [16 Pac. 17], in 1887. In the meantime the legislature of 1885 [Stats. 1885, p. 143], apparently recognizing and conceding the force of the decision in *Latson* v. *Nelson,* undertook to secure and enforce the constitutional lien by other means, that is, by regulating the mode of making and executing contracts, rather than by disregarding the right of contract. It amended sections 1183 and 1184 of the code by providing that in all building contracts the contract price should be payable in installments at specified times after the beginning of the work, that at least one-fourth thereof should be made payable not less than thirty-five days after the completion of the work contracted for, that all such contracts exceeding one thousand dollars should be in writing, subscribed by the parties thereto, and should be filed in the office of the county recorder before the work was begun thereunder, that if these regulations were followed, liens upon the property for the erection of the structure should be confined to the unpaid portion of the contract price, but that all contracts which did not conform thereto, or which were not filed as provided, should be void, that in such case the contractor should be deemed the agent of the owner, and the property should be subject to a lien in favor of any person performing labor or furnishing material to the contractor upon the building for the value of such labor or material. This law, with some amendments not material to our discussion, remained in force until the enactment of the revision of 1911 aforesaid.

In the meantime the supreme court has followed the rule established by the cases last cited and has uniformly declared, with respect to such liens, that if there is a valid contract,

the contract price measures the limit of the amount of liens which can be acquired against the property by laborers and materialmen. The following cases declare the doctrine directly: *Stimson Mill Co.* v. *Braun,* 136 Cal. 125, [89 Am. St. Rep. 116, 57 L. R. A. 726, 68 Pac. 481]; *McDonald* v. *Hayes,* 132 Cal. 495, [64 Pac. 850]; *Snell* v. *Bradbury,* 139 Cal. 382, [73 Pac. 150]; *Kellogg* v. *Howes,* 81 Cal. 177, [6 L. R. A. 588, 22 Pac. 509]; *Greig* v. *Riordan,* 99 Cal. 319, [33 Pac. 913]; *Hampton* v. *Christensen,* 148 Cal. 736, [84 Pac. 200]; *Hoffman-Marks Co.* v. *Spires,* 154 Cal. 116, [97 Pac. 152]; *Butler* v. *Ng Chung,* 160 Cal. 438, [Ann. Cas. 1913A, 940, 117 Pac. 512]; *Marshall* v. *Vallejo Bank,* 163 Cal. 474, [126 Pac. 146]; *Ganahl Co.* v. *Weinsveig,* 168 Cal. 669, [143 Pac. 1025]; *Clark* v. *Beyrle,* 160 Cal. 314, [116 Pac. 739]. In addition to these express declarations there are many cases in which the rights of the parties were adjudicated upon the assumption that this proposition constituted the law of the state. Each one of the large number of decisions regarding the priorities of liens in the unpaid portion of the contract price, each decision respecting the right to reach payments made before maturity under such contract, each decision as to the formal requisites of contracts under the amendment of 1885, and each decision as to the apportionment under section 1200 of the Code of Civil Procedure, upon the failure of the contractor to complete the work, constitutes an affirmance of the doctrine that the contract, legally made, limits the liability of the owner to lien claimants. There has been scarcely a session of this court since the enactment of that amendment at which one or more cases have not been presented and decided which, in effect, amounted to a repetition of this doctrine The legislature has also recognized the doctrine by subsequent amendments following out the theory of the amendment of 1885.

The scheme of regulation embodied in the amendments of 1885 and continued until 1911 did not work well in practical operation. Disputes frequently arose concerning the terms of contracts, the time of maturity of installments, the making of payments, the time of beginning the work, with respect to the filing of the contract for record, and many other details which, under the somewhat elaborate plan of the statute, would affect the validity of the contract, or the right to a lien to the unpaid part of the price when the contract was valid.

Our reports show many decisions on these questions. Amendments to the statute were made from time to time, but, upon the whole, conditions were not improved. The act of 1911 was obviously designed for the purpose of removing, as far as possible, the objections to the former law.

The plan differs in important particulars from the previous statute. It amends the entire chapter with the exception of sections 1186, 1188, 1189, 1191, 1191a, 1196, 1198, 1199, and 1201. The provisions of these sections harmonize with either scheme. Sections 1183a, 1200 and 1203a are repealed. The amended sections do not prescribe the form of building contracts, nor do they fix the time or the manner of payment of the contract price or require its payment in installments. All these things are left to the will of the owner and the contractor as they may agree. They do not require that one-fourth of the contract price, or any part thereof, shall be made payable after completion. The parties are at liberty to contract for payment in advance, or in specific property. Such contracts are not declared void by the present law. Section 1183 allows the contract to be filed before the work is begun under it, and provides that there may be filed with it a bond executed by the contractor with good sureties in an amount at least one-half of the contract price, conditioned for the payment in full of all claims on account of labor performed for, or materials furnished to, the contractor in the work, and giving to such persons a right of action on said bond for such claims. Other changes are made, but as they are not material to the decision as to the extent of the lien and the validity of the provision for a contractor's bond, we leave them to be noticed on the discussion of the questions to which they may relate.

The first point urged by the appellant in support of its appeal is that the portion of the statute providing for the execution and filing of the bond by the contractor is unconstitutional and void. It is necessary here to state more fully the statutory provisions regarding the same. Section 1183, after declaring that persons who work upon a building or furnish materials, shall have a lien upon the property for the value of the labor done and materials furnished, proceeds as follows:

"The liens in this chapter provided for shall be direct liens, and shall not in the case of any claimants, other than the

contractor, be limited, as to amount, by any contract price agreed upon between the contractor and the owner except as hereinafter provided.''

It then provides that such liens shall not extend to any labor or materials not embraced within the original contract, or modification thereof, if the claimant has had actual notice thereof before the performance of labor or furnishing of material. It further provides, with respect to such notice, that the filing of the contract, or modification thereof, in the office of the county recorder before the commencement of the work shall be equivalent to actual notice thereof to lien claimants. Then follows the important provision of the section in these words:

''In case said original contract shall, before the work is commenced, be so filed, together with a bond of the contractor with good and sufficient sureties in an amount not less than fifty (50) per cent of the contract price named in said contract, which bond shall in addition to any conditions for the performance of the contract, be also conditioned for the payment in full of the claims of all persons performing labor upon or furnishing materials to be used in such work, and shall also by its terms be made to inure to the benefit of any and all persons who perform labor upon or furnish materials to be used in the work described in said contract so as to give such persons a right of action to recover upon said bond in any suit brought to foreclose the liens provided for in this chapter or in a separate suit brought on said bond, then the court must, where it would be equitable so to do, restrict the recovery under such liens to an aggregate amount equal to the amount found to be due from the owner to the contractor, and render judgment against the contractor and his sureties on said bond for any deficiency or difference there may remain between said amount so found to be due to the contractor and the whole amount found to be due to claimants for such labor or materials or both. No change or alteration of the work or modification of any such contract between the owner and his contractor shall release or exonerate any surety or sureties upon any bond given under this section. It is the intent and purpose of this section to limit the owner's liability, in all cases, to the measure of the contract price where he shall have filed or caused to be filed in good faith with his original contract a valid bond with good and sufficient sure-

ties in the amount and upon the conditions as herein provided. It shall be lawful for the owner to protect himself against any failure of the contractor to perform his contract and make full payment for all work done and materials furnished thereunder by exacting such bond or other security as he may deem satisfactory."

Section 14 of the revisory act is as follows:

"The provisions of this act shall be liberally construed with a view to effect its purpose. They are not intended as a reenactment of the provisions of former statutes, with the policy heretofore impressed upon the same by the courts of this state, but are intended to reverse that policy to the extent of making the liens provided for, direct and independent of any account of indebtedness between the owner and contractor, thereby making the policy of this state conform to that of Nevada and other Pacific coast states."

The court below found that the bond was given in pursuance of section 1183 aforesaid. It is not claimed by the respondents that it is good as a common-law bond, or that there was any consideration for its execution other than the belief that it was required by said section. The contention of the appellant is that the entire scheme of the provision is invalid, because it invades the right of contract preserved by section 1, article I, of the constitution, and that, even if its provisions are otherwise valid, the requirement of a bond is beyond the legislative power and void, and that, for these reasons, the bond is without any consideration and is unenforceable. If the premises are correct, the conclusion that the bond creates no obligation would follow. The principle that a bond given solely to comply with a statute which is itself void, or which does not require the bond as supposed, is without binding force is settled by the cases of *Powers* v. *Chabot*, 93 Cal. 270, [28 Pac. 1070]; *Coburn* v. *Townsend*, 103 Cal. 235, [37 Pac. 202]; *Reay* v. *Butler*, 118 Cal. 115, [50 Pac. 375], and similar cases, and, on the other hand, if the statute is valid in this respect, it would necessarily follow that there was a sufficient consideration for the bond and that it was binding upon the surety. The validity of the act as a whole and the provision requiring such bond in particular are, therefore, questions necessary to the determination of the case.

We have shown that when this act was passed it was the established doctrine of this state that the legislature cannot create mechanics' liens against real property in excess of the contract price, where there is a valid contract, but that it is within the legislative power, in order to protect and enforce the liens provided for in the constitution, and so far as for that purpose may be necessary, to make reasonable regulations of the mode of contracting, and even of the terms of such contracts, and to declare that contracts shall be void if they do not conform to such regulations. This court has never in any case departed from this doctrine. The case of *Laidlaw* v. *Marye,* 133 Cal. 170, [65 Pac. 391], and similar cases holding that, although a contract not in conformity with the statutory regulations is void, and, therefore, does not limit the lien claimant to the contract price, that it is binding in controversies between the contractor and owner to fix the amount of the contractor's recovery in *assumpsit* for the value of the work he has done, are not in conflict with this doctrine, but. in recognition of it. *Merced L. Co.* v. *Bruschi,* 152 Cal. 372, [92 Pac. 844], and *Burnet* v. *Glas,* 154 Cal. 249, [97 Pac. 243], had to do with invalid contracts. They do not impugn the doctrine stated; they assert and enforce it. Nor is there any suggestion contrary thereto in the recent case of *Martin* v. *Becker,* 169 Cal. 301, [146 Pac. 665].

The portions of the act of 1911 above quoted clearly show that the legislature did not intend thereby to depart from this doctrine, but that, on the contrary, the design was to follow it and to protect lienholders by means of regulations concerning the mode of contracting and dealing with prop· erty for the purposes of erecting improvements thereon. The first declaration on the subject is that the liens provided in the chapter shall be ''direct liens'' (whatever that may mean), and that persons, other than the contractor, shall not be limited by the contract price ''except as hereinafter provided.'' The proviso referred to is found in the following declaration in the same section:

''It is the intent and purpose of this section to limit the owner's liability, in all cases, to the measure of the contract price where he shall have filed or caused to be filed in good faith with his original contract a valid bond with good and sufficient sureties in the amount and upon the conditions as herein provided.''

A plainer declaration of the intention to make the contract price the limit of the owner's liability, where the bond and contract have been filed as required by this section, could scarcely be made. The rather vague statement in section 14 of the revising act of 1911 that said act is intended to make the liens therein provided for "direct and independent of any account of indebtedness between the owner and contractor," should not be interpreted as in contravention of section 1183, unless no other reasonable construction is apparent. It is not difficult to find a better application of the expression. Section 1183 describes two classes of liens. One class consists of liens in cases where the bond has not been filed, in which case, the state of accounts between the owner and contractor, and even the contract price, are immaterial to the lien, except as to the contractor. The other classes consist of all cases in which the proper bond and contract are duly filed. In these cases, by the express language of the section, the contract price is made to control, and the account of the indebtedness thereon from the owner to the contractor is decisive of the amount of the liens which can be adjudged against the property. The above quoted clause of section 14 is, therefore, obviously applicable only to the first mentioned class of liens, those where the bond and contract are not filed. To apply it to the other class of liens would work a practical repeal of very many of the elaborate provisions of the chapter as revised, since, for the most part, they would be wholly unnecessary and useless. The intent of the statute is to restrict liens to the contract price in all cases where the provisions of the statute regarding the bond are observed, and to impose upon the owner the penalty of paying all liens to the extent of the value of the work done and materials furnished where he shall neglect to comply with the statute.

The effect is that persons contracting for the erection of buildings or structures on their property must require the contractor to furnish such bond, and must file the same with the contract in the recorder's office, or, as an alternative, he must see to it that the value of the work and materials used in the building by the contractor is paid to the persons who furnish the same. A contract not accompanied by such bond is not declared to be invalid, but it furnishes no protection to the owner against liens for labor and material on the building. Do these regulations come within the doctrine of *Latson*

v. *Nelson,* 2 Cal. Unrep. 199, 11 Pacific Coast Law J. 589, and the other cases above cited?

The amendment of 1880 to section 1183 purported to confer liens for work and material on buildings without any regard whatever to the contract between the owner and the contractor. It gave the owner no method of exercising his right to contract with the builder for improvements on his property, without practically assuming total responsibility for all failure of such builder to pay for the labor and material thereon. It provided no means whereby he could avoid liens placed upon the property for the value of such work and materials. The right of persons to contract in that manner respecting their property was, to that extent, taken away. This was held to be a violation of the inalienable right to acquire and possess property guaranteed by section 1, article I, of the constitution. The revision of 1885 also interfered with the right of contract. Under its provisions the owner of property, in all proceedings to have improvements placed thereon by a builder, was not allowed to make payment in advance of the work. He was required to make his contract provide that three-fourths of the contract price should be paid in installments as the work progressed, or at completion, and one-fourth thirty-five days or more after completion. Failing in this, he was declared to have made no contract at all and the property was made subject to all claims for work and material used in the structure erected. This, although clearly a destruction, *pro tanto,* of the right of the owner freely to contract for the improvement of his property, was held to be a reasonable and permissible regulation of the right of enjoying property and of making contracts in relation thereto. The difference in the decisions upon these two differing laws points to the solution of the first part of the question. In view of the fact that our constitution itself gives to workmen and materialmen a lien upon property for the value of the work and materials they bestow upon it and directs the legislature to provide for the efficient enforcement of such liens, it is obvious that any legislative provision to that end which offers to the property owner a reasonable and practical mode of improving his property through a contractor at a fixed price and without further liability, should be considered as a legitimate exercise of the constitutional mandate. The plan of the amendment of 1880

was deemed unreasonable because it deprived the owner of all right to contract for improvements on his property for a sum fixed by his contract with the builder, while the amendment of 1885 was considered reasonable because it provided a practical method for the making of improvements under such contracts, although it did to some extent infringe upon liberty of contract. This theory has not been put in this way nor fully expressed in the several decisions on the subject. But the discussion therein plainly points to this as the true reason for the differentiation of the two enactments. The case of *Latson* v. *Nelson*, and others following it, construing the amendment of 1880, and the case of *Stimson Mill Co.* v. *Braun*, 136 Cal. 125, [89 Am. St. Rep. 116, 57 L. R. A. 726, 68 Pac. 481], holding that the legislature may not require such contracts to be made payable only in money, go far toward the limit of reason on the point that section 15, article XX, of the constitution, is subordinate to the declaration of rights in section 1, article I. The law of 1911 here involved does not deprive the owner of the right to contract for the improvement of his property. It allows him to contract freely for such improvement and upon such terms as he may deem for his best interests. All it exacts from him, as a condition of such exemption from liability, and in order to make his contract effective, is that he shall provide a reasonable security for the constitutional lien given for labor and materials furnished to his contractor. It is not an unreasonable burden. It is one which we think the people have the power to impose, and which we believe to be within the scope of the constitutional mandate in the section conferring such liens, and of the police power.

Upon the point that any provision requiring a bond to secure such liens, whether given by the contractor or the owner, is unconstitutional, the appellant cites a line of cases beginning with *Gibbs* v. *Tally*, 133 Cal. 373, [60 L. R. A. 815, 65 Pac. 970]. The other cases are *Shaughnessy* v. *American Surety Co.*, 138 Cal. 543, [69 Pac. 250, 71 Pac. 701]; *San Francisco etc. Co.* v. *Bibb*, 139 Cal. 192, [72 Pac. 964]; *Snell* v. *Bradbury*, 139 Cal. 380, [73 Pac. 150]; *Montague* v. *Furness*, 145 Cal. 206, [78 Pac. 640], and *Hampton* v. *Christensen*, 148 Cal. 729, [84 Pac. 200].

In 1893 the legislature amended section 1203 by requiring a bond to be filed to secure claims of workmen and material-

men on a building. The foregoing cases construe this section. It provided that every contract required to be filed by the mechanic's lien law should be accompanied by a bond in the sum of at least twenty-five per cent of the contract price which should be made to inure to the benefit of persons performing labor and furnishing materials for the building. To this was added a provision that a failure to file such bond should render the owner and contractor liable in damages to any person entitled, under the mechanic's lien law, to a lien upon the property affected by the contract. *Gibbs* v. *Tally* involved the consideration of the latter clause of the section. The other cases involved the validity of the bond thus required, and held that this provision for a bond is in violation of the inalienable right to acquire and possess property and contract in relation thereto. The section did not specify who should file the bond, nor to whom it should be made payable, nor who should execute the same. In *Gibbs* v. *Tally* the contract for the building was valid under the lien law as it then existed, and the persons who filed claims of lien had foreclosed the same, and had caused all of the contract price remaining unpaid from the owner to the contractor to be applied upon their liens, but it was not sufficient to pay them in full. Gibbs, one of the lien claimants, then began the action against Tally, the owner, to recover the damages which the statute purported to allow in case of the failure to file the required bond. The gist of the decision is that to allow such recovery, where there was a valid contract between the owner and the contractor, would make the owner liable for a debt which he did not owe, for an amount in excess of the contract price and which he had not agreed to pay. This, it was declared, was an unlawful infringement of section 1, article I, of the constitution. The facts involved in the case have no necessary bearing upon the question whether or not the legislature could in any case require the contractor to file a bond for the benefit of persons having claims against him regarding the same before entering upon the work.

In *Shaughnessy* v. *American Surety Co.*, 138 Cal. 543, [69 Pac. 250, 71 Pac. 701], the question of the power of the legislature to require the bond specified in section 1203 was directly involved. It was said that the requirement of such a bond was entirely outside of any protection of the constitu-

tional lien given to mechanics and materialmen, and that it was in violation of the constitutional right of contract respecting property. The other cases above cited merely follow the decision in *Shaughnessy* v. *American Surety Co.* without further discussion of the subject. There is a marked difference between the law denounced as void in these cases and the act of 1911. The provisions of section 1203 do not appear to have had any direct relation to the validity or invalidity of the contract for the building. It was an additional requirement, an additional burden upon the parties. It had no connection with or relation to the constitutional mechanic's lien. The bond required to be given by the act of 1911, on the contrary, is provided for the express purpose of enabling the owner to escape liability for his building in any sum in excess of the contract price. It has a direct relation to the constitutional lien and to the effect of the contract for the improvement. The efficacy of the contract as a protection against such liens is made to depend directly upon the act of securing and filing the bond with the building contract. We think these differences are sufficient to distinguish this case from the line of cases above cited. We are unable to perceive any constitutional objection to the expedient of providing that by the execution and filing of such bond the owner may be protected against the delinquencies of his contractor while, at the same time, lien claimants are afforded a security for the payment of their claims. We therefore hold that the foregoing decisions are not applicable, and that the provision for requiring this bond is not unconstitutional or invalid.

Some minor points remain to be noticed. It is urged that the provisions of the act requiring persons who make building contracts to file a bond, while no such requirement is made of any other person who may wish to make other kinds of contracts, creates a lack of uniformity, and is class legislation. There is an intimation to this effect in *Shaughnessy* v. *American Surety Co.*, 138 Cal. 543, [69 Pac. 250, 71 Pac. 701], but the point was not directly involved, and the case does not hold to that doctrine. It is not sustained by authority. The rules regarding legislation respecting classes have been thoroughly settled in this state. The case most often cited is *Pasadena* v. *Stimson*, 91 Cal. 238, [27 Pac. 604]. The decision in that case has been followed in very many cases

since it was rendered.  The principle announced is that a law is general and constitutional when it applies equally to all persons embraced in a class founded upon some natural or intrinsic or constitutional distinction.  To this it has been added, in some cases, that the distinction must have some reasonable relation to the legislation enacted respecting the class.  The fact that the constitution confers upon persons performing labor or furnishing materials for the construction of a building the right to a lien thereon, at once establishes these persons as a class, and makes a constitutional distinction between them and all other persons making contracts. This justifies legislation for the benefit of such claimants and governing the conduct and contracts of the owner of the property and the person contracting to construct buildings thereon. There is no improper classification.

The claim that the terms of the bond, as prescribed in section 1183, would authorize a recovery on the bond for the full amount found due to lien claimants and in excess of the sum named therein as the penalty thereof, is untenable.  The penalty of the bond is to be not less than one-half the amount of the contract price.  This measures the obligation and the liability of the surety.  The subsequent statement that after applying to the payment of liens the sum due from the owner to the contractor, such claimants may, in a suit on the bond, recover the unpaid balance of their claims, cannot be construed to authorize a recovery on the bond of more than the penal sum thereof.  The provision must be construed as an entirety.  So construed it seems that the recovery, being had in a suit on the bond, is necessarily limited to the penalty thereof.  The fact that such suit may be joined with a suit to foreclose the liens does not make it any the less a suit on the bond.  The statement that the bond must be ''conditioned for the payment in full of the claims'' of lienholders is the usual phraseology of the obligation of a bond at common law. This is not understood to create an obligation in excess of the penal sum named, but only an obligation to pay such claims in full, provided they do not exceed the penal sum. The statute, being descriptive of the terms of a bond, should be given the same meaning.

The objection to the allowance of $144 to the respondent Hughes Manufacturing and Lumber Company, for extras on its subcontract for wall-beds in the building, cannot be sus-

tained on the record before us. That company agreed with Thomas, the contractor, to furnish the wall-beds of a kind described as No. 40, for six hundred dollars. While they were being installed, the architect interfered, stating that the specifications of the contract called for wall-beds known as No. 29, and directed that No. 29 wall-beds be placed in the building, which was done, with the consent of Thomas. The $144 was the additional charge on account of this change. The plans and specifications were attached to and filed with the general contract, as a part thereof, but they are not set forth in the bill of exceptions, nor elsewhere in the record. Therefore the finding of the court must be sustained on the presumption that the court below, upon examining the specifications, ascertained that they call for No. 29 wall-beds and that there was no change in the original contract nor any departure therefrom. The objection that the allowance of $144 includes some small amount, not inquired into at the trial or shown by the record, charged for the labor of making the changes, which would not be chargeable to the owner, or to the surety on the bond, is made in appellant's brief, but it was not made at the trial, or in the court below, and for that reason we refuse to consider it on appeal.

Our conclusion that the revision of 1911, as a whole, and the part thereof requiring the bond, are valid enactments, disposes of all other points urged by the appellant.

The judgment is affirmed.

Sloss, J., Lorigan, J., Lawlor, J., and Angellotti, C. J., concurred.

HENSHAW, J., Concurring.—I concur in the foregoing judgment, but solely for the following reasons: It would seem when the constitution of this state declares, as it does, that "mechanics, materialmen, artisans, and laborers of every class shall have a lien upon the property . . . for the value of such labor done and material furnished," that it was wholly beyond the power of the legislature to destroy or even to impair this lien. The legislature, controlling all procedures in courts of justice, could prescribe reasonable regulations with which the lien claimant must comply in the matter of the enforcement of his lien, and declare in effect that for a noncompliance with these reasonable regulations the lien claimant

shall be deemed to have waived his lien.    Again, as a part of
its powers in this matter, it may interpose between the lien
claimant and the property owner some other fund, and exact
of the lien claimant that he first exhaust this fund before en-
forcing his lien upon the property.    But it would also seem
that there is a well-defined limitation upon the legislature's
power in the matter of this lien so solemnly guaranteed by
the constitution itself, and that limitation is that if the inter-
posed fund (or bond) shall prove inadequate, the legislature
cannot say to the lien claimant that he must be satisfied with
this fund, though he do not receive from it all that the con-
stitution has guaranteed him.    But by a long course of judi-
cial decisions, beginning with what I believe to be a mistaken
view, first announced in the unreported case of *Latson* v. *Nel-
son*, 2 Cal. Unrep. 199, 11 Pacific Coast Law J. 589, this
court has held that the legislative powers are greater than
those I have indicated, and that those powers go to the extent
of permitting the legislature to impair or even to destroy the
lien.    It is too late, perhaps, for this court to recede from
what I believe to have been the mistaken view thus forced
upon it.    The fact still remains, however, that under our de-
cisions the legislature can and does control the whole matter.
Thus, if the legislature desires to do so, it may give the lien
claimant all the rights touching his lien which the constitution
guarantees him.

It would appear that by the new act here under review the
legislature undertook to do this thing.    The act, to begin with,
declares the right to a lien in the very language of the con-
stitution.    It does away with much of the pre-existing technical
requirements of filing contracts, etc., and in its last section
declares:

"Sec. 14.    The provisions of this act shall be liberally con-
strued with a view to effect its purpose.    They are not in-
tended as a re-enactment of the provisions of former statutes,
with the policy heretofore impressed upon the same by the
courts of this state, but are intended to reverse that policy to
the extent of making the liens provided for, direct and in-
dependent of any account of indebtedness between the owner
and contractor, thereby making the policy of this state con-
form to that of Nevada and the other Pacific Coast states."

By this language it seems that the legislature had at last
decided to give to these lien claimants everything that the

constitution declares they should have.  But by a most singular interpolation by way of an amendment to this act as originally proposed the question is again thrown into confusion.  By the language of this interpolated amendment it is declared, "if the original contract shall, before the work is commenced, be so filed, together with a bond of the contractor with good and sufficient sureties, in an amount not less than fifty per cent of the contract price named in said contract . . . then the court must, where it would be equitable so to do, restrict the recovery under such liens to an aggregate amount equal to the amount found due from the owner to the contractor."  The owner may have paid the contractor (and he is not prohibited from so doing) everything that is due, and in such case this language would limit the right of the recovery of the lien claimant to what he could obtain under the bond.  In short, he would have no lien upon the property at all.  Here is as radical a denial of the constitutional lien as is found in any of the earlier statutes.  The inconsistency between this language and other parts of the act is too apparent to require comment.  Yet, as this seems to have been the deliberate design of the legislature, it is perhaps incumbent upon this court under its former decisions to give that design legal effect.  If the legislature in fact means to give claimants the rights which the constitution guarantees them, as it declares its desire to do in section 14 above quoted, it alone has the power to do so by language which will make it apparent that a lien claimant may still have recourse to the property upon which he has bestowed his labor if the interposed intermediate undertaking or fund shall not be sufficient to pay him in full.  This court is, however, justified, I think, in waiting for a plainer exposition of the legislature's views and intent in the matter than can be found in this confused and confusing statute.

Melvin, J., concurred.

Rehearing denied.