[Civ. No. 1501. Third Appellate District.—August 25, 1916.]

## PACIFIC MANUFACTURING COMPANY (a Corporation) et al., Respondents, v. R. A. PERRY et al., Appellants.

BUILDING CONTRACT—ABANDONMENT BY CONTRACTOR—AMOUNT APPLICABLE TO LIENS—RULE PRIOR TO REVISORY ACT OF 1911.—Under the mechanic's lien statutes as they existed prior to the Revisory Act of 1911 (Stats. 1911, p. 1313), where a valid building contract was executed and filed and the work thereunder abandoned by the contractor before completion, the amount of the contract price applicable to the liens of other persons than the contractor was to be determined in accordance with section 1200 of the Code of Civil Procedure, and in determining such amount allowance was required to be made for the cost of completing the building.

ID.—DEVIATIONS FROM PLANS—ADDED COST OF BUILDING—RIGHT OF CONTRACTOR—VALIDITY OF CONTRACT.—A building contract is not rendered void by reason of alterations in the plans adding materially to the cost of the building, where the contract was recorded and expressly provided that should the owner at any time during the progress of the building request any alterations, deviations, additions, or omissions from said contract, specifications, or plans, he should be at liberty to do so, and the same should in no way affect or make void the contract, but would be added to or deducted from the amount of said contract price, as the case might be, by a fair and reasonable valuation.

ID.—NOTICE OF NONRESPONSIBILITY—WHEN NOT REQUIRED.—An owner of a building is not required to give notice of nonresponsibility, as provided by section 1192 of the Code of Civil Procedure, in a case where there is a valid recorded contract made on her behalf and with her knowledge and consent, as the contract is the measure of her liability.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order denying a new trial. William H. Waste, Judge.

The facts are stated in the opinion of the court.

Snook & Church, and C. Irving Wright, for Appellants.

W. B. Rinehart, C. L. Colvin, Ezra W. Decoto, and Robert B. Gaylord, for Respondents.

CHIPMAN, P. J.—The action is to foreclose laborers' and materialmen's liens for work performed and materials furnished in the construction of a residence and garage in the city of Oakland. With the action by Pacific Manufacturing Company were consolidated ten other actions. The following findings of fact were made by the court:

That defendant R. A. Perry was the reputed owner, defendant Winifred A. Perry the real owner, of the premises; that on June 10, 1910, the said R. A. Perry and defendant Magneson entered into a written contract whereby the latter agreed "to construct and complete certain buildings, to wit, a certain brick veneered and frame residence and garage appurtenant thereto upon the above-described land and premises and to furnish the labor and materials" therefor, according to certain plans, drawings, and specifications, which said plans, drawings, and specifications were attached to and made part of said contract, and the same was duly recorded on June 13, 1910; that the agreed price for said work and materials was $23,567, payable in progressive installments, the sum of six thousand dollars to be paid thirty-five days after the date of acceptance by architect and owner. Among other provisions, the contract contained the following:

"Third. Should the owner at any time during the progress of said buildings, request any alterations, deviations, additions or omissions from said contract, specifications, or plans, he shall be at liberty to do so, and the same shall in no way affect or make void the contract, but will be added to or deducted from the amount of said contract price, as the case may be, by a fair and reasonable valuation.

"Fourth: Should the contractor at any time, during the progress of said work, refuse or neglect to supply a sufficiency of materials or workmen, the owner shall have the power to provide materials and workmen (after three days' notice in writing given) to finish the said works, and the expenses shall be deducted from the amount of said contract price.

"Ninth: No extras will be allowed except agreed on in writing at time of making same, and signed by both interested parties.

"Tenth: It is hereby agreed by both interested parties that the said party of the second part shall enter into contracts with the following subcontractors for their portion of the work at prices mentioned:

Pacific Mfg. Co. for mill work, sash, doors and glass . $3,385.00
Burtchael & Crowley, plumbing.................. 1,895.00
P. N. Kuss Co., (or acceptable to owner), painting.  950.00
Century Electric Co., electric work and wiring....  650.00
Inlaid Floor Co., hardened floors...............  940.00
Schmitt & Co., hot air heating..................  470.00"

It was further found that the contractor, Magneson, commenced work about June 13, 1910, in the construction of said residence and garage, and so continued said work until February 11, 1911, when he "abandoned the construction of said buildings and all work and labor ceased thereon," and no labor was performed nor any materials furnished to be used, nor was any used in the construction thereof for a period of thirty days next immediately thereafter; that on March 22, 1911, defendants R. A. and Winifred made and filed for record in the office of the county recorder of Alameda County, and there was recorded on that day, a notice of abandonment of said contract by said Magneson on February 11, 1911; that no notice in writing requiring said Magneson to finish said works was ever given to said Magneson nor any demand made upon him as required by said contract, "to wit, the fourth subdivision thereof hereinbefore specifically quoted and set forth."

It is further found that the said defendant, Winifred A. Perry, never entered into any contract in writing with said defendants Magneson and R. A. Perry, or either of them, relating to the construction of said buildings; that said Winifred A. Perry never at any time gave notice pursuant to section 1192 of the Code of Civil Procedure, or otherwise, that she would not be responsible for the labor performed or materials furnished in the construction of said buildings, but during all the time said Magneson was engaged in the construction of said buildings by the said R. A. Perry he was so engaged with the knowledge and consent of said Winifred, and all the materials furnished for said buildings were furnished with her knowledge and consent; that after said Magneson had abandoned said work, to wit, on March 22, 1911, said defendants R. A. and Winifred commenced to complete said buildings and completed the same on or about September 6, 1911, and on that day notice of completion was duly filed by the said Winifred and defendants R. A. and Winifred that they had expended the sum of $18,356.59 in the said completion; that said buildings were not constructed nor were they completed according

to the plans and specifications and original contract, but "were actually constructed in such a manner that the said buildings greatly exceeded in value the original contract price as agreed upon between the said parties defendant, to wit, the said R. A. and Winifred Perry and said Magneson"; that "no extras were ever agreed upon in writing nor any writing signed with relation to extras by any persons interested or by any of the parties, to wit, the said Perry and Magneson, in pursuance of subdivision 9 of the contract for said building, between the said defendant Magneson and said defendant R. A. Perry hereinbefore specifically set forth; . . . that during the course of the construction of said buildings and prior to the abandonment thereof by the defendant Magneson, said defendant R. A. Perry paid the said Magneson" certain stated sums at different stages of the work amounting in all to ten thousand dollars, "paid on account of the contract price and no more"; that the said defendants Magneson and Perry never at any time, nor did the said defendant Winifred A. Perry ever at any time, fix or attempt to fix, according to the provisions of said contract, or otherwise, by a fair and reasonable valuation or at all, the amount or values of said alterations of, deviations from, additions to or omissions from said contract, in writing, or otherwise"; that the reasonable value of said extra work amounts in the aggregate to $3,866.28, "of which there had been paid, at the time of the abandonment aforesaid by said Magneson, the sum of $1,300.00."

It was also found "that the value of the work and materials done and furnished in the construction of said buildings, including materials then actually delivered on the ground, estimated as near as may be by the standard of the whole contract price (exclusive of the extra labor performed and materials furnished as aforesaid), at the time of the abandonment of the said contract by said Magneson, as aforesaid, was and is the sum of $14,730.00"; that "all of the materials which were furnished by the plaintiffs herein, were furnished to be used, and actually used in the construction of said buildings, and all of the labor performed by these plaintiffs was actually performed upon and in the construction of said buildings . . . all with the full knowledge and consent of the said Winifred A. Perry." The foregoing are the general findings more or less applicable to all the claims involved.

The court then finds the facts as to the specific amounts of labor performed and materials furnished by the several plaintiffs, the filing of their liens, and the amount remaining unpaid in each case, amounting in all to the sum of $7,970.87.

The court found, among other conclusions of law, that the contract between Magneson and R. A. Perry, as recorded, was void, and "that no legal contract was ever made or entered into between the owner of said premises, to wit, Winifred A. Perry and O. M. Magneson, for or with relation to the construction of said buildings"; that the "liens hereinbefore declared in favor of said plaintiffs, and the said several sums hereinbefore stated and declared to be due, owing and unpaid to the said plaintiffs respectively, are prior and superior to the rights, interests and claims of the defendants Winifred A. Perry and R. A. Perry, in and to said premises," and that plaintiffs are entitled to have the "said described land together with the buildings thereon and the premises thereof sold . . . for the satisfaction of said respective liens," etc.

Judgment was accordingly entered.

Defendants appeal from the judgment and from the order denying their motion for a new trial.

The theories upon which respondents urge affirmance of the judgment are as follows:

1. That a valid contract existed which was duly recorded; that it was abandoned, and hence the amount applicable to the liens of plaintiffs should be measured by section 1200 of the Code of Civil Procedure.

2. That no contract existed, because in the construction of the buildings the plans and specifications of the recorded contract were so departed from and so increased the cost of the buildings as actually constructed, as to "constitute a new and independent contract, and render void the recorded contract."

3. That the entire interest of defendant Winifred A. Perry in the premises should be subjected to plaintiffs' liens, because of her failure to give the notice of nonresponsibility required by section 1192 of the Code of Civil Procedure.

The court found that there was a valid contract. If that finding is to stand, the payment of the liens must be determined by section 1200 of the Code of Civil Procedure, and the statutes in force prior to the act of 1911 (Stats. 1911, p. 1313). Section 1183 of the Code of Civil Procedure gives a lien of mechanics and materialmen for labor done or materials fur-

nished, ''whether at the instance of the owner, or of any other person acting by his authority or under him,'' and ''in case of a contract for the work between the reputed owner and his contractor, the lien shall extend to the entire contract price, and such contract shall operate as a lien in favor of all persons, except the contractor, to the extent of the whole contract price.''

Section 1200 provides that where the contract has been abandoned before completion, ''the portion of the contract price applicable to the liens of other persons than the contractor, shall be fixed as follows: From the value of the work and materials already done and furnished at the time of such failure or abandonment, including materials then actually delivered or on the ground, which shall thereupon belong to the owner, estimated as near as may be by the standard of the whole contract price, shall be deducted the payments then due and actually paid, according to the terms of the contract and the provisions of sections 1183 and 1184, and the remainder shall be deemed the portion of the contract price applicable to such liens.''

In the recent case of *Roystone. Co.* v. *Darling,* 171 Cal. 526, [154 Pac. 15], the history of our mechanic's lien law is very fully shown, and the various decisions of the supreme court are cited which have given construction to the statute as it has been amended from time to time. It was shown in that case that up to the passage of the act of 1911, the supreme court ''has followed the rule established by the cases last cited, and has uniformly declared, with respect to such liens, that if there is a valid contract, the contract price measures the limit of the amount of liens which can be acquired against the property by laborers and materialmen; . . . that the contract legally made limits the liability of the owner to lien claimants.'' See, also, *Ganahl Lumber Co.* v. *Weinsveig,* 168 Cal. 664, [143 Pac. 1025], where the meaning of section 1200, as affecting the liability of the owner in the case of an abandoned valid contract, was very clearly pointed out.

What, then, was the situation when the contract was abandoned and what were the lienors' rights? The court found that the contract price was $23,567. It found that the value of the extra work performed and materials furnished at the time of abandonment was $3,866.28, of which there had been paid the sum of one thousand three hundred dollars; and that

the value of the work and materials, including materials then actually delivered at the ground, "estimated as near as may be by the standard of the whole contract price (exclusive of the extra labor performed and materials furnished as aforesaid), at the time of the abandonment of the said contract by said Magneson as aforesaid, was and is the sum of $14,730," of which the sum of ten thousand dollars had been paid.

Respondent states the account thus:

Labor performed and materials furnished....$14,730.00
Value of alterations, etc.....................   3,866.28
                                                ─────────
    Total ..................................$18,596.28
Upon which was paid........................  11,300.00
                                                ─────────
Leaving applicable to the liens.............$ 7,296.28
The court gave judgment for................   7,970.87

—which is $674.59 more than the fund, accepting respondents' method of computation.

But respondent makes no allowance for the cost of completing the buildings which, through no fault of appellants, were left in an unfinished condition. What the *actual* cost of completion was to appellants may be immaterial (*Ganahl Lumber Co.* v. *Weinsveig,* 168 Cal. 664, [143 Pac. 1025]), but as was said in *Hoffman-Marks Co.* v. *Spires,* 154 Cal. 111, 116, [97 Pac. 152] : "When he [owner] is, without any default on his part, burdened with the cost of completing the building, it is but fair and just that he should be relieved of the obligation of paying to the original contractor, or those claiming under him, so much of the contract price as corresponds to the portion of the work left undone. In no other way can he be protected in his constitutional right to have his liability limited to the amount which, by a valid contract, he has agreed to pay."

We have been unable to formulate any equation under the rule of section 1200 as approved by the supreme and appellate courts, which would support the findings of the court for the full amount found subject to the liens, on the theory of a valid contract abandoned by the contractor.

The finding that there was a valid contract and that it was abandoned by the contractor before completion is sustained by the evidence, and unless the judgment can find support upon

one or other of plaintiffs' remaining theories, it must be reversed.

Plaintiffs' second theory was that the original contract was rendered void by reason of the alterations in the plans adding so materially to the cost of the buildings. The contract contained the provision quoted above, by which the owner was given the right to make any alterations he might wish to make "from said contract, specifications or plans," which, when made, "shall in no way affect or make void the contract, but will be added to or deducted from the amount of said contract price, as the case may be, by a fair and reasonable valuation." Notice of the provision of the contract was given to all parties concerned by its recordation, and nearly all of them furnished some of the materials or labor constituting these alterations, and no objection was made to any claim, because it was for extras. It would be difficult to express in language more explicit authority to deviate from the plans and specifications than is found in this contract. So far as lien claimants are concerned, alterations are immaterial except where there is an abandonment, and in such case they may be considered in ascertaining the cost of completing the buildings according to the contract, for the contract so expressly provides. (*Johnson* v. *La Grave,* 102 Cal. 324, [36 Pac. 651].) That the owner may provide in his contract for changes or alterations in the building during its construction without invalidating the contract, we do not doubt.

Witness Quinn, manager of plaintiff Pacific Manufacturing Company, was asked by plaintiffs' attorney whether or not there were changes or alterations made in the construction of the buildings prior to abandonment, and if so, to state what, if any, there were. "A. One of the changes made was in the cornice of the building. The owner took exception to it for some reason or other, and caused the cornice to be torn down and a new cornice was put up in place of it. Another change was made in the pergola after that was in place. The owner . . . objected to the use of beams and had that torn down and a new pergola put in place. And then the owner was dissatisfied with the quality of brick used in the construction of the building and had a special brick manufactured. There were other changes of a minor character. . . . Q. Were there any changes in the interior arrangement of the house, the rooms, to your knowledge? A. No material changes." He testified

as to some changes made after abandonment, but we cannot see that they would affect the question of the lienors' rights at the time of abandonment, for they would be taken into account in ascertaining the cost of completion under the contract.

Other witnesses pointed out some changes made in the course of the construction of the building.

The contract called for a "brick veneered and frame residence and garage." The court found that the reasonable value of the changes made, in materials and labor, was $3,866.28; that while said changes did not materially alter the elevations and appearances of said buildings, the same consisted in the use of more expensive material, greater increase in labor, and necessitated the tearing out and replacing of certain work done and performed in the buildings, thereby changing the interior construction as to value and character of materials, and to a certain extent in general appearance.

We do not think that the facts found justified the conclusion of the trial court that the contract was void.

Plaintiffs' third theory calls for the application of section 1192. This claim is that this section of the Code of Civil Procedure makes the title and interest of defendant Winifred absolutely responsible irrespective of the contract, and that the findings and judgment may rest entirely on the fact that she did not give the notice contemplated by section 1192.

Plaintiffs allege in their complaints that "said defendant R. A. Perry, acting for himself and on behalf of the said defendant Winifred A. Perry and with her full knowledge and consent, entered into a contract in writing with the said defendant Magneson," etc. In their answers defendants admit these averments of the complaints.

The finding of the court was, "that defendant R. A. Perry is and was at all times herein mentioned, the reputed owner of the hereinafter described land, buildings and premises, and that Winifred A. Perry is and was at all times herein mentioned, the real owner, to wit, the owner in fee," etc.

The court also found that during all the time that labor was being performed or materials being furnished for said buildings, said defendant Magneson was employed and engaged in the construction of said buildings by the said R. A. Perry with the full knowledge and consent of the said defendant Winifred A. Perry, "and that all the materials furnished

or labor performed'' was furnished and performed ''with the knowledge and consent of the said Winifred A. Perry.''

There was no direct finding that R. A. Perry executed the contract as the agent of his wife, Winifred, nor was there any evidence that she personally contracted with Magneson. The admitted averments of the complaint that defendant R. A. Perry entered into the contract on her behalf, and with her full knowledge and consent, rendered any finding on the fact of his authority to act for her in the matter immaterial. And the finding that ''the said Winifred A. Perry never made or entered into any contract in writing with the said defendant R. A. Perry and one Magneson, or either of them, relating to the construction of said buildings,'' is not inconsistent with the fact that her husband entered into the contract on her behalf and with her full knowledge and consent.

It was said in *Stimson Mill Co.* v. *Braun*, 136 Cal. 122, 125, [89 Am. St. Rep. 116, 57 L. R. A. 726, 68 Pac. 481] : ''The materialman and the laborers are protected in their right to a lien by the provision in section 1183 of the Code of Civil Procedure, requiring such contract to be in writing and made a matter of public record. They know that, in accordance with the decisions of this court, the legislature cannot give a right of lien to an extent greater than the contract price. By being placed upon record the contract is open to their inspection and examination, and if they are not content with its provisions, they may decline to furnish any materials for the building or perform any labor thereon. But if they do furnish any, their right to a lien must be limited by the terms of the contract.'' And as was said in the Roystone case, *supra:* ''The contract, legally made, limits the liability of the owner to lien claimants.''

In the present case there was a valid contract made on behalf of the owner and with her knowledge and consent, and it seems to us that the owner was not obliged also to give notice under section 1192 of nonresponsibility, in addition to the recorded contract, in order to secure the protection given her by the statute. We have found no case where our supreme court has held that lien claimants may disregard the recorded contract of the owner and proceed against him under section 1192, unless he has also given the notice mentioned in that section. Where the contract is made on his behalf and with his knowledge and consent and is recorded, and the lien claim-

ants so state in their complaints, we can see no reason why the contract should not be the measure of his liability. In short, the owner's liability under section 1192 does not attach when there is a valid recorded contract made in his behalf.

Some other questions are presented in the briefs, but the view we have taken renders their consideration unnecessary.

The learned trial court seems to have found the amount due on the claims upon the theory that the contract was void because of the alterations in the plans and that the owner was liable under section 1192. We think the contract was valid and the owner's liability should be measured by section 1200.

The judgment and order are reversed.

Hart, J., and Ellison J., *pro tem.,* concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 23, 1916.