[Civ. No. 2150.   First Appellate District.—December 31, 1917.]

## T. B. HUBBARD, Respondent, v. A. JURIAN et al., Appellants.

MECHANIC'S LIEN—PAYMENT OF MONEY TO CONTRACTOR AFTER NOTICE TO WITHHOLD — EFFECT OF CODE AMENDMENT. — Under the amendment of 1911 to section 1184 of the Code of Civil Procedure (Stats. 1911, p. 1315), providing that it shall be lawful for the owner to withhold from the contractor sufficient money due or that may become due to answer the claim of any lien for labor or material furnished to the contractor, it is not mandatory upon the owner to withhold payment after notice, and the doctrine of "premature payments" as formerly applied in mechanic's lien cases has no application to such a case.

ID.—FILING OF LIENS—TIME.—The limit of time fixed by statute for the filing of mechanic's liens where no notice of completion or cessation from labor has been filed is ninety days after the actual completion of the building.

ID.—CESSATION FROM LABOR—TIME FOR FILING LIENS.—The time allowed for filing mechanics' liens where there has been a cessation from labor is ninety days after the expiration of thirty days from the date of such cessation or, in other words, one hundred and twenty days after the actual cessation from labor.

ID.—COMPLETION BY OWNER—TIME FOR FILING LIENS NOT EXTENDED.— The subsequent completion of a building by the owner after a

thirty-day cessation from labor thereon, by the contractor, does not operate as an extension of time for filing liens.

ID. — INTEREST ON LIEN CLAIMS — TIME. — Interest on lien claims for labor and material furnished under contracts fixing no time of payment should be allowed from the time of the commencement of the actions to foreclose the liens.

ID.—CONSTITUTIONALITY OF SECTION 1183, CODE OF CIVIL PROCEDURE— CHANGES IN BUILDING CONTRACT WITHOUT RELEASING SURETY.— The provision of section 1183 of the Code of Civil Procedure that no modification of a building contract between the owner and the contractor shall relieve the surety on the bond required to secure payment of lien claims is not unconstitutional.

ID. — CONTRACT FOR SECOND STORY TO BUILDING — MODIFICATION OF ORIGINAL CONTRACT — FILING UNNECESSARY. — A contract for the construction of a second story to be added to a building in course of construction is a modification of the original contract not required to be filed.

ID.—PREMATURE PAYMENT ON CONTRACT—SURETY ON BOND NOT RELEASED.—The surety on a bond given to secure the performance of a building contract pursuant to section 1183 of the Code of Civil Procedure is not released by the premature payment of an installment of the purchase price by the owner to the contractor, in view of the provision of such section that no modification of the contract between the owner and the contractor shall relieve the surety.

ID.—RECOVERY ON BOND—PERSONS ENTITLED.—Only those laborers and materialmen who have perfected their claims by filing verified liens within the time specified by the statute are entitled to recover upon the bond given pursuant to section 1183 of the Code of Civil Procedure.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from an order denying a new trial. W. A. Beasly, Judge.

The facts are stated in the opinion of the court.

Rogers & Bloomingdale, for Appellants Jurian et al.

James Walter Scott, for Appellant Maryland Casualty Co.

Beggs & McCormish, for Respondents Hubbard et al.

R. V. Burns, C. L. Witten, and H. W. McComas, for Respondent Guth.

John W. Sullivan, for Respondent Mathewson.

Owen D. Richardson, for Respondent Minton.

LENNON, P. J.—These are consolidated actions for the foreclosure of several liens, claimed for labor and materials furnished in the erection and construction of a building upon the premises of the defendants Odell and Jurian.

The facts are as follows: On the twenty-third day of September, 1912, the defendants Odell and Jurian entered into a written contract with one H. A. Spreen for the erection by the latter of a one-story concrete building upon the premises of said defendants for the contract price of $5,260, payable in four installments, as follows: First payment of $1,315 when the first floor joists were in place and wall one-half story high; second payment of $1,315 when the plastering was completed on the inside; third installment of $1,315 thirty-five days after completion of the building. The contract further provided that the building should be constructed under the supervision of an architect, and payments made upon certificates from him.

In connection with this contract, a bond was executed by the contractor, Spreen, as principal, with the defendant Maryland Casualty Company as surety, in the sum of $2,630 (being one-half of the contract price), conditioned for the faithful performance of the contract on the part of the contractor, and for payment in full of claims for labor and materials furnished in the construction of the building, and further stipulating that if the act of the legislature of 1911, amending the lien laws, should be held invalid, then the bond should remain in full force and effect for the protection of the obligee.

This bond was attached to the contract and by its terms refers to and makes said contract a part thereof. Said contract and bond were duly filed on the 30th of September, 1912. Work was commenced under this contract about the middle of October, 1912.

On the tenth day of December, 1912, while said building was in course of construction, the defendants Odell and Jurian entered into a further contract with the contractor, Spreen, for the construction of a second story to be "added to the building [then] in course of construction." The contract price for this second story was three thousand six hundred dollars, payable in four equal installments of nine hundred dollars each as the work progressed. In connection with this contract a bond was executed by the contractor, Spreen,

with the defendant Maryland Casualty Company as surety for the sum of one thousand eight hundred dollars (being one-half the contract price) and containing provisions substantially the same as the first bond. This supplemental contract and bond were filed in the office of the county recorder of Santa Clara County on the 26th of December, 1912.

It appeared from the evidence that the defendants, Odell and Jurian, paid, on November 25, 1912, the contractor the first installment of $1,315 called for by the original contract, and on February 26, 1913, the second installment of $1,315 called for by said contract. They paid the first installment of nine hundred dollars called for by the contract for the erection of the second story on or about the 30th of December, 1912.

All of these payments were made upon certificates of the architect to the effect that they were due and payable, and no contention is made on the part of the lien claimants as to the propriety of any of these payments, except as to the second payment of $1,315 upon the original contract on February 26, 1913, which payment the lien claimants contend, and the trial court found, "was prematurely made."

The court further found that on the first day of March, 1913, the contractor, Spreen, abandoned work upon the building and ceased labor thereon for more than thirty days thereafter. On April 21, 1913, the defendants Odell and Jurian began the work of completing the building and did complete it about the 16th of June, 1913, at an expenditure of $4,744.59, which the court found to be the reasonable cost of such completion. The court also found that there was extra work upon the building amounting to $362.60, thus making the amount of the contract price actually remaining in the hands of the owners, Odell and Jurian, including the amount due for extras, $948.01.

The court charged the account of said defendants with the $1,315 paid as the second installment upon the first contract, upon the theory that such payment had been prematurely made, and determined that the lien claimants were entitled to personal judgment against said Odell and Jurian in the sum of $2,263, with interest, "to be ratably distributed among them according to their respective claims."

The evidence showed, and the court found, that the several claims of lien involved in the consolidated actions were filed

upon the dates following, viz.: The claim of O'Brien Lumber
Co., June 25, 1913; the claim of Hubbard & Carmichael, July
2, 1913 (embraced in the Hubbard action); the claims of
G. J. Guth, Fred L. Peterson, Dudfield Lumber Co., and Mc-
Donald and Burke (embraced in the suit of G. J. Guth),
April 1, 1913; the several claims involved in the suit of Wal-
ter G. Mathewson (Ayrer, Peterson, Graybill, Conti, Judson,
McDaniel, and Taylor) were filed partly on the 28th and
partly on the 29th of March, 1913; the claim of E. C. Power,
July 19, 1913, and the claim of Charles C. Minton, July 23,
1913.

From the findings made the trial court deduced the con-
clusion of law that the several parties plaintiff were entitled
to judgment foreclosing their respective claims of lien in the
following amounts, viz.: T. B. Hubbard, $1,972.28; E. C.
Power, $125; G. J. Guth, $627.55; W. G. Mathewson, $678.60;
C. C. Minton, $337.90. It was further adjudged that the sev-
eral parties plaintiff were entitled to interest upon their re-
spective claims of lien from the tenth day of April, 1913.

Judgment was also entered against the defendant Mary-
land Casualty Company for the full amount of each and all
of the claims with interest, which aggregated the sum of
$2,522.27, and the judgment provided that the liens should
be first satisfied to the extent of that sum by sale of the prem-
ises, and that execution should thereupon issue against the
surety for the deficiency, if any, remaining.

The appeal is from the judgment and from the order deny-
ing motion for a new trial by the defendants Odell and
Jurian, as owners, and the Maryland Casualty Company, as
surety.

The contention made upon behalf of the owners, Odell and
Jurian, that the judgment is against law in so far as it
charges the owners, defendants Odell and Jurian, with the
sum of $1,315 found to have been "prematurely" paid to
the contractor in advance of the time stipulated therefor in
the contract and after notice to withhold payment had been
served upon the defendants, is based upon the fact that sec-
tion 1184 of the Code of Civil Procedure does not now, as it
did prior to its amendment in 1911 (Stats. 1911, p. 1315),
expressly make it "the *duty* of the person who contracted
with the contractor to . . . withhold from his contractor . . .
sufficient money due, or that may become due to such contrac-

tor, to answer'' the claim of any person and any lien that might be filed therefor for labor or material, or both, furnished to the contractor, when such claim was evidenced by a written notice to the owner showing the character and value of the material or labor furnished the contractor. Instead of making it the duty of the owner upon receipt of such notice to withhold a sufficient sum out of the money due or to become due to the contractor to satisfy the claim, the statute now provides that ''upon such notice being given it shall be *lawful* for the owner to withhold, etc.'' Because of this change in the wording of the statute, it is argued that it was not the legislative intent to make it mandatory upon the owner to withhold payment after notice, and that therefore the doctrine of ''premature payments'' as formerly applied in mechanic's lien cases has no application to the facts of the present case. This contention, we think, must be sustained.

Construing the statute in question as amended in 1911, our supreme court, in the case of *Roystone* v. *Darling,* 171 Cal. 526, [154 Pac. 15], declares that it permits the owner ''to contract freely'' for such improvements as he desires to make upon his property ''upon such terms as he may deem to his best interest. All it exacts from him as an exemption from such liability, and in order to make his contract effective, is that it shall provide a reasonable security for the constitutional lien given for labor and materials furnished to his contractor.'' In short, as pointed out by Mr. Justice Henshaw in a concurring opinion in the case last cited, the owner is not prohibited by the statute as it exists to-day, and as it existed at the time of the execution of the contract and the furnishing of the labor and materials, from paying the whole amount of the contract price in advance of the completion of the work. This being so, it follows that the statute as amended does not now, save at the option of the owner, secure unto persons giving the requisite notice an equitable garnishment upon the moneys due or to become due to the contractor, and consequently it must be held that the trial court erred when, in effect, it adjudged that the defendants Odell and Jurian, as owners, were as a matter of law estopped from asserting that they did not have in their hands the sum of $1,315, which they had in fact paid to the contractor, even though the same was not due at the time of its

payment or at the time of the service of the notice to withhold.

As previously pointed out, the claim of lien of Hubbard & Carmichael was filed for record on July 2, 1913; that of E. C. Power on July 19, 1913, and that of C. C. Minton on July 23, 1913. It is contended that the trial court erred in allowing these particular claims because it was shown that they were not filed within the time limited by law.

The plaintiff Hubbard sues as assignor to foreclose two liens, one the Hubbard & Carmichael claim for $557, and the other the O'Brien Lumber Company claim for $1,415.28. It will be noted that no attack is made upon the O'Brien claim. The limit of time fixed by statute for the filing of liens where no notice of completion or cessation from labor has been filed is ninety days after the actual completion of the building, and continued cessation from labor for a period of thirty days is deemed to be equivalent to completion for the purpose of fixing the time within which liens may be filed. It has been held that this time allowance for the filing of liens as prescribed by the section last cited is limited to ninety days after the expiration of thirty days from the date of cessation of labor. In other words, the lien claimant has 120 days from the cessation of labor within which to file his lien. (*Sunset Lumber Co.* v. *Batchelor*, 167 Cal. 512, [Ann. Cas. 1916B, 664, 140 Pac. 35].)

The plaintiff Hubbard's complaint, in so far as it concerned the claim of lien of Hubbard & Carmichael, alleged that the building was completed on June 20, 1913. The answer of the defendants squarely denied the allegation of the complaint that the building was completed on June 20, 1913, and then averred "the fact to be that on or about March 10, 1913, both of the contracts theretofore entered into by said contractor . . . were abandoned by said contractor and that said contractor . . . ceased work upon said building and that the defendants A. Jurian and G. W. Odell were compelled to, and did proceed to, complete the erection and construction of said building." The evidence, however, shows, and the trial court found, that work ceased upon the building on March 1, 1913.

It is contended upon behalf of the respondent Hubbard that the claim of lien of Hubbard & Carmichael which was filed on July 2, 1913, was within time because it was filed

within 120 days from March 10, 1913, "on or about" which date the answer alleged work on the building was abandoned. In this behalf it is urged that this date, by reason of the averments of the answer, was admitted by the defendants to be the date when work ceased upon the building, and that as a consequence the trial court should have accepted that date as the time of cessation of labor despite evidence to the contrary, and that the finding of the trial court that work ceased upon the building on March 1, 1913, was, in so far as the Hubbard & Carmichael claim was concerned, unauthorized, and cannot therefore be permitted to prevail over the admitted fact.

In support of this contention we are cited to the familiar rule that an admission made in the pleading is binding on the party making it; that a fact admitted by the pleadings of an opponent need not be proved; and that any evidence introduced contrary to such admission must be disregarded by the trial court when making its finding. In our opinion this rule has no application to the situation presented by the pleadings in the present case. The burden of proof was upon the plaintiff to show that his assignor, Hubbard & Carmichael, had filed their claim of lien within the statutory time after constructive completion of the building. (Bloom's Law of Mechanics, Supp., p. 258.) The answer of the defendants squarely and sufficiently denied the allegation of the complaint that the building was completed on June 20, 1913. This denial made it incumbent upon the plaintiff to proffer proof showing that the claim of lien had been filed within time. Moreover the phrase "on or about March 10th," as used in the answer, is indefinite and uncertain, and might therefore, consistently mean several days before or after that date, and, inasmuch as the exact date of the completion of the building or the cessation of work thereon was a material fact to be determined by the court below as a foundation for the allowance or rejection of the claims of lien, it cannot be said that the allegation in question was such a definite admission of fact as would preclude the necessity for the taking of evidence or the making a finding thereon.

The finding of the trial court that work on the building ceased on March 1, 1913, and that such cessation continued for more than a period of thirty days, being sufficiently supported by evidence, it follows that the Hubbard & Car-

michael lien, which was filed July 2, 1913 (123 days after March 1, 1913), was just three days too late, and therefore should not have been allowed.

The condition of the pleadings, evidence, and findings with reference to the Power and Minton claim of lien is identical with the condition of the pleadings, evidence, and findings concerning the Hubbard & Carmichael claim of lien, and inasmuch as the Power and Minton claim were filed for record respectively on July 19 and July 23, 1913, manifestly they were respectively filed twenty and twenty-four days too late, and should not therefore have been allowed.

It is claimed that because the building was actually completed by the owners, Odell and Jurian, after the abandonment by the contractor, and no notice of completion having been filed, that the three claims of lien of Hubbard and Carmichael, Power and Minton, having been filed within ninety days after actual completion of the building by the owners, were filed in time, notwithstanding the fact, as shown by the evidence and found by the court, that there had been a continued and uninterrupted cessation of labor on the building commencing March 1, 1913.

In response to this contention, it will suffice to say that it has been held that a subsequent completion of the building by the owner after a thirty days' cessation from labor thereon by the contractor does not operate as an extension of time for the filing of liens claimed under and created by the original contract. (*Johnson* v. *La Grave*, 102 Cal. 324, [36 Pac. 651].)

If our conclusion concerning the status of the several claims of lien and stop-notices be correct, it follows that the judgment was correct only to the extent of allowing and foreclosing the liens included in the Mathewson suit, aggregating the sum of $678, and the several claims of lien involved in the Guth action aggregating $627, and the claim of lien of O'Brien included in the Hubbard action, amounting to $1,415.28, all of which make the sum total of $2,720.28.

Incidentally it should be noted that defendants Odell and Jurian make some contention that the Minton claims should not have been allowed in full, because the evidence shows that only a part of the materials furnished by Minton was used in the construction and completion of the building. The record shows that all of the materials included in this

claim were furnished to be used in the building, and that the portion which was not used in the building was left on the premises at the time of the abandonment of the work by the contractor, and that the owners refused to permit Minton to remove them. Therefore it may be fairly said that to all intents and purposes all of the materials included in the Minton claim were not only furnished to be used, but were retained by the owners in the completion of the building.

It is contended upon behalf of the defendants Odell and Jurian that the claim of lien filed by Fred L. Peterson and embraced in the suit of Guth is insufficient in form and substance and should not therefore have been allowed. This particular claim of lien states that "said claimant furnished plumbing work and materials at the agreed price of $130 . . . that said plumbing work and materials amount to the sum of $130." The evidence shows that the agreed price of that work was $165, but that Power was prevented from finishing his contract because of the abandonment of the original contract, and that the reasonable value of the labor and material furnished by Power up to the time of the cessation of labor was $130. The statement of the character and value of the materials furnished in Power's claim of lien was substantially true, and that is all that is required to give it validity. (*Barrett-Hicks* v. *Glas,* 14 Cal. App. 289, [111 Pac. 760].)

It is contended that the trial court erred in allowing interest upon the several claims of lien commencing April 10, 1913. We think the point is well taken. Counsel for the respective parties have not indicated to us in their briefs why interest was allowed from this particular date, and our investigation of the record has not disclosed the reason for fixing that date as the time from which interest should commence to run, and so far as we have been able to ascertain, all of the claims were for labor or materials furnished under contracts where no time of payment was fixed other than that which might be implied from the transaction itself. Interest, therefore, should have been allowed upon the several claims of lien which were properly proved only from the time each action was commenced to foreclose the several liens. And this is so because at the time the several actions were commenced to foreclose the several claims of lien, the lien claimants' right to recover upon the open account upon which

the liens rested was vested in them and was capable of being made certain by calculation. Consequently they were entitled to recover interest upon their several claims from the date of the commencement of the several actions. (*Pacific Mutual etc. Co.* v. *Fisher,* 106 Cal. 224, [39 Pac. 758].)

A cursory examination of the record shows that the several actions were not all instituted on one and the same day, and we do not feel called upon to make a detailed search of a voluminous and poorly indexed record for the purpose of ascertaining when the several actions were respectively instituted. In view of the fact that the judgment must be modified, as will be hereinafter indicated, the task of ascertaining the exact date of the institution of the several actions for the purpose of computing interest upon the liens which were properly allowed, and the character of the contract upon which they depend, will be more readily and perhaps more accurately performed by the court below and counsel for the respective parties.

Upon behalf of the defendant Maryland Casualty Company it is urged that the provisions of section 1183 of the Code of Civil Procedure requiring that a bond be given to secure the payment of claims arising under a building contract in order to relieve the owner from liability to lienors in excess of the stipulated contract price is unconstitutional in that the legislature has not only exacted a bond, but it has gone further and prescribed as well, that ''No change or alteration of the work or modification of any such contract between the owner and his contractor shall release or exonerate any surety or sureties upon any bond given under this section.'' In other words, the surety must give a bond conditioned that lienors will be paid irrespective of what changes may be made in the original contract. Counsel argues that if this law is held to be valid, there is then one contractual field in which it is impossible for three persons, owner, contractor, and surety, to enter into a contract the obligations of which are definitely established in advance.

The constitutionality of this section was upheld in the case of *Roystone Co.* v. *Darling,* 171 Cal. 526, [154 Pac. 15], and while this particular point was not discussed, what was there said will, we think, answer the objection made here, viz.: ''The penalty of the bond is to be not less than one-half the amount of the contract price. This measures the obligation

and the liability of the surety." Clearly, this removes any doubt as to the definite character of the surety's obligation.

Another point urged by counsel for the Surety Company is that the bond given in connection with the contract for the erection of the second story of the building is void upon the ground that work was commenced upon this second story before the bond and contract were filed.

This point is determined adversely to the contention of counsel in the case of *Hammond Lumber Co.* v. *Willis,* 171 Cal. 565, [153 Pac. 947]. In that case neither the bond nor the contract was filed. The court held that the burden of the surety is not increased by the omission of the owner to record the bond, nor is the bond rendered void by such omission.

Upon this phase of the case, also, it is contended that the two building contracts, dated respectively September 23, 1912, and December 10, 1912, were separate and distinct contracts and the two bonds given to secure the same were equally separate and distinct obligations on the part of the Maryland Casualty Company, and the trial court erred in refusing to treat them as separate contracts.

The contract for the second story is, we think, a modification of the original contract. In *Barrett-Hicks Co.* v. *Glas,* 9 Cal. App. 491, [99 Pac. 856], the facts were similar to the present case. In that case a contract was made for adding a second story to a building in course of construction and, this having been done without the consent of the surety, the court held it to be such an alteration of the original contract as to discharge the surety from liability. It is manifest that if the court had regarded this contract for the second story as an entirely separate and independent contract, it would not have affected the liability of the surety upon the original contract in any manner. It was for the very reason that the court considered it an alteration or modification of the original contract that the surety was held to be discharged from liability. In the case at bar, the Surety Company did consent to this alteration or modification of the original contract and signified its assent thereto by uniting in the execution of the contract for the second story. This contract for the second story being simply a modification of the original contract, it was not required to be filed at all, and therefore it is inconsequential whether it was filed before or after work on

the second story was commenced, as it is only the original contract which the statute requires to be filed. (Code Civ. Proc., sec. 1183.)

It is contended that the surety was released by the owner from all obligation under its bond given to secure the performance of the contract dated September 23, 1912, by reason of the alleged premature payment of the installment of $1,315 by the owners to the contractor, which money was used by the contractor to pay his own personal debts, and that such payment was in contravention of the terms of the contract, and resulted in prejudice to the surety. This contention is based upon the fact that the bond in suit contained a covenant that the obligee (defendants Odell and Jurian) would "keep and perform each and every of the matters and things set forth in said contract to be by the obligee kept or performed, at the times and in the manner as in said contract specified."

It is the rule generally that a surety has the right to stand upon the terms of his contract of suretyship, and that he will be exonerated to the extent that he has been prejudiced by any violation of the covenants of the contract, but we are forced to the conclusion that this general rule cannot be made to apply to the contract of suretyship in suit here. And this is so, we think, because of the fact that the bond in question was executed pursuant and in obedience to the requirements of a statute which, although it permits such a bond to contain conditions for the performance of the contract, nevertheless also expressly provides that "no . . . modification of any . . . contract between the owner and his contractors shall release or exonerate any surety . . . upon any bond given under this section." (Code Civ. Proc., sec. 1183.)

It will thus be seen that the covenant of the bond in suit concerning premature payments by the owner was, in so far as it may have been intended to limit the right of lien claimants to recover on the bond in excess of, and contrary to the letter and spirit of, the statute. Therefore in so far as the lien claimants are concerned, it must be regarded as surplusage. Assuming that the evidence shows a premature payment, as found by the trial court, still such payment was, in effect, no more nor less than a modification of the terms of the contract, and consequently will not avail in the face of

85 Cal. App.—49

the express statutory inhibition, as against the lien claimants, to defeat the bond.

The surety attacks the judgment on the ground that it is made liable for any deficiency arising after the sale of the property. This is expressly provided for in the code (sec. 1194, Code Civ. Proc.). Spreen, the contractor, was personally liable for the whole amount due, and it follows that the surety is liable to the same extent.

Finally, it is contended upon behalf of the Surety Company defendant that only those persons who have perfected claims of lien are entitled to recover upon the bond. This contention, we think, must be sustained. The bond in suit was executed in response to the requirements of the statute. It is therefore a statutory bond in the strictest sense, and under the familiar and well-settled rule parties claiming the benefit of the obligation of the bond must show a substantial compliance with the conditions of the statute under which the bond was given. Section 1183 of the Code of Civil Procedure, under which the bond was given, is part and parcel of title IV, chapter 2, of that code, which relates exclusively to "liens of mechanics and others upon real property," and section 1187 of the same code and chapter requires that every person claiming the benefits of the provisions of the designated chapter must file a verified lien within the time specified by that section. Obviously, the several code sections of the chapter in question must be considered and construed together, and when so considered and construed it must be held that the provision of section 1183 that the required bond shall "in addition to any conditions for the performance of the contract, be also conditioned for the payment in full of the claims of all persons performing labor upon or furnishing materials, etc.," has reference to the "claims" of lien specified in section 1187 and required to be filed for record within a designated time, and to the "claims" which the statute further says must be verified by the oath of the claimant or some other person. (*Richardson etc. Co.* v. *Chicago etc. Co., ante,* p. 650, [170 Pac. 856].)

The bond exacted by the statute in question has direct relation to the lien provided for and permitted in the fundamental law of the state (*Roystone Co.* v. *Darling,* 171 Cal. 542, [154 Pac. 15]), and the requirement of the statute that the bond shall be so conditioned as to give "any and all persons

who perform labor upon or furnish materials . . . a right of action to recover upon said bond in any suit brought to foreclose the liens provided for in this chapter or in a separate suit brought on said bond," evidently was intended to give to the lien claimant the right to resort to the sum secured by the bond as an additional lien fund or security for the satisfaction of the lien.

That such was the legislative intent and purpose is indicated, we think, by the remainder of the sentence just quoted from the code section last referred to, which declares that "then [upon the giving of the required bond] the court must, where it would be equitable so to do, restrict the recovery under such liens to an aggregate amount equal to the amount found to be due from the owner to the contractor, and render judgment against the contractor and his sureties on said bond for any deficiency or difference there may remain between said amount so found to be due to the contractor and the whole amount found to be due to claimants for such labor or materials or both."

While the first portion of the quoted sentence of the code section under consideration makes mention only of the "claims" of persons performing labor, etc., nevertheless, when read and construed in its entirety, it is manifest that the "claims" referred to are claims of lien, and contemplate only the claims of lien created in the manner and within the time specified by section 1187.

It must be conceded, of course, that the mere furnishing of labor or material to be used in the construction of a building, while giving the right to claim a lien, will not alone suffice to create the lien, for until the claim of lien is perfected in compliance with the statute, "it is a mere inchoate right personal to the individual, which he may choose to perfect or not at his pleasure, and which, until perfected, has no tangible existence. . . . " (*Mills* v. *La Verne Land Co.,* 97 Cal. 254, [33 Am. St. Rep. 168, 32 Pac. 169].) This being so, then the proviso of the statute that the required bond shall be conditioned for the payment in full of "claims" of all persons who furnish labor or material and to give to such persons a right of action to recover in any suit brought to foreclose the liens provided for or in a separate suit brought on the bond must mean that only perfected claims of lien may be litigated either in a single suit against the property and

the bond or in a separate suit against the bond alone. In other words, the statute contemplates that the plaintiff may at his option embrace within an action to foreclose his lien against the property a cause of action resting upon the claim of lien against the bond; or at his option he may institute separate actions—one to foreclose his lien against the property and the other for the satisfaction of his lien against the bond—but whether combined or separately instituted, the fundamental basis of the cause of action in each instance is' the existence of a perfected claim of lien.

Under this construction of the statute the surety will be liable only for the excess of the amount of the lien, if any, over the sum found to be due to the contractor. Any other construction would ignore the settled constitutional and statutory conception of the scope, purpose, and effect of the mechanic's lien law of this state; would violate the familiar equitable rules regulating the relative rights of principal and surety, and also offer opportunity and incentive to collusion between materialmen, etc., and the contractor whereby, if so minded, they could readily and without fear of redress agree to the obvious detriment of the surety that no liens would be perfected against the property to the end that the contractor might be paid in full and the surety alone resorted to for the satisfaction of outstanding claims.

Our conclusion, therefore, is that the failure of the several lien claimants in the present case to perfect their liens within the statutory time operated to defeat their right to recover upon the bond in suit just as effectively as such failure operated to defeat their right to recover upon the claim of lien itself.

It follows from what we have said that the judgment must be and it is hereby modified by striking therefrom the sum of $1,019.90, which is the aggregate sum of the several claims of lien which we have found were filed too late, and also by striking therefrom the sum of $1,315, which the court erroneously charged to the defendants Odell and Jurian as a premature payment. As thus modified the judgment will stand affirmed in favor of the plaintiff Guth in the sum of $627, the plaintiff Mathewson $678, and in favor of the plaintiff Hubbard & Carmichael in the sum of $1,415.28, which is the amount of the O'Brien Lumber Company's lien. Interest, of course, is to be computed upon the claims of lien which

have been duly perfected, from the date of the institution of the action in each instance.

Richards, J., and Kerrigan, J., concurred.

The court, on January 12, 1918, filed the following supplemental opinion herein:

THE COURT.—In the original opinion heretofore filed in this case it was stated that "the condition of the pleadings, evidence, and findings with reference to the Power and Minton claims of lien is identical with the condition of the pleadings, evidence, and findings concerning the Hubbard & Carmichael claim of lien, and inasmuch as the Power and Minton claims were filed for record respectively on July 19 and July 23, 1913, manifestly they were respectively filed twenty and twenty-four days too late, and should not therefore have been allowed." This statement was inaccurate in so far as it applies to the Minton case.

A further investigation of the record shows that Minton filed a claim of lien on July 23, 1913, for the sum of $337.90, which recited that the lien was claimed for materials furnished to Odell and Jurian, the owners, on or about March 31, 1913.

This claim of lien against the owners was made and based, apparently, upon the fact that the owners had used a portion of the material which had been furnished in the first instance to the contractor and left upon the premises when the building was abandoned by the contractor, and which the owners subsequently refused to return to Minton upon demand. The theory of this claim of lien, in other words, was that it was founded upon an implied contract directly with the owners.

The record apparently sustains this theory, and there is some evidence that the materials remaining upon the abandonment of the building and retained by the owners were valued at $126.50. The record shows that the building was actually completed by the owners June 15, 1913, and therefore, upon the theory stated, the claim of lien in question, filed July 23, 1913, was perfected within time, and to the extent of the established value of the materials shown to have been retained, namely, $126.50, was properly allowed and should be included in the judgment against the owners, but not in the judgment against the Surety Company defendant, because Minton did not sue said defendant on this claim.

A petition for a rehearing of this cause was denied by the district court of appeal on January 29, 1918, and the following opinion then rendered thereon:

THE COURT.—In the above-entitled action the lien claimants Mathewson and Guth, whose actions to foreclose their respective liens were consolidated with those of several other lien claimants, have filed a petition for rehearing in which the only point made is that the opinion as originally filed failed to directly make any award for costs incurred upon the appeal, and that, inasmuch as the judgment of the lower court was materially modified as to some of the lien claimants, the costs of appeal, unless otherwise directed, would fall upon all of the respondents under the provisions of the rules of the supreme court and district court of appeal, which provide that "in all cases in which the judgment or order appealed from is reversed or modified, and the order of reversal or modification contains no directions as to the costs of appeal, the clerk will enter upon the record, and insert in the *remittitur*, a judgment that the appellant recover the costs of appeal." (Rule 23, [160 Cal. liii, 119 Pac. xiii].)

While it is true that the judgment appealed from, was materially modified by the original opinion in so far as certain designated lien claimants were concerned, nevertheless it was the intent and purpose of the opinion to affirm the judgment in so far as it related to the claims of Guth, Mathewson, and O'Brien Lumber Company, and while that intent and purpose is fairly inferable from the concluding paragraph of the opinion, nevertheless to the end that there may be no doubt upon that point we will say that the judgment allowing the Guth, Mathewson, and O'Brien Lumber Company claims was affirmed in all of its substantial features, and therefore it is directed that these particular claimants should be and they are hereby relieved from the costs of appeal.

The petition for rehearing is denied, as is also the petition of the defendant Maryland Casualty Company.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 28, 1918.