[Civ. No. 3578.  Third Appellate District.—October 18, 1928.]

WESTERN BRICK CO. (a Corporation), Respondent, v. F. L. SMITH et al., Defendants; EAGLE INDEMNITY CO. (a Corporation), Appellant.

J. Karl Lobdell and H. L. Watt for Appellant.

G. C. DeGarmo, H. B. Cornell, Irl D. Brett and R. L. Horton for Respondent.

PLUMMER, J.—This is an appeal by the defendant Eagle Indemnity Company, a corporation, from a judgment rendered in seven cases consolidated and tried as one, for the foreclosure of certain mechanics' liens.

On or about the twenty-seventh day of May, 1924, one I. G. Simons, the owner of certain real property in the city and county of Los Angeles, entered into a building contract with one Robert W. Clark for the erection of a five-story apartment and store building. The cost of said building named in the contract was $82,869, payable as follows: A first trust deed in the sum of $45,000; a second trust deed in the sum of $27,500; final payment in cash of $10,369 upon completion of the building. At the time of the exe-

cution of the contract the contractor, as principal, and the Eagle Indemnity Company as surety, entered into an undertaking in the sum of $73,000, the surety bond containing the usual covenants providing that it should inure to the benefit of both the owner, laborers, and materialmen; the contractor and surety undertaking to complete the building and agreeing to pay for all labor and materials. The contractor proceeded with the construction of the building as provided for in the building contract, and completed the building on or about the fifth day of November, 1924, on which last-named date notice of completion was filed in the office of the county recorder of Los Angeles County.

During the course of the construction of said building the owner informed the contractor that he would not be able to pay the $10,369 called for in the contract upon the completion of the structure. Thereupon, and on or about the thirteenth day of August, 1924, Simons, as owner of the premises, executed a deed of conveyance to the contractor, Robert W. Clark. This deed was recorded in the office of the county recorder of Los Angeles County. At the same time Clark executed and delivered to Simons a promissory note in the sum of $17,500, and as security for the payment thereof executed and delivered to Simons a trust deed covering the property that had been conveyed to him by the deed just referred to as executed and delivered by Simons. Thereupon, the following words were written upon the building contract just referred to: "In consideration of $10.00 and other good and valuable considerations paid to said owner by said contractor, receipt of which is hereby acknowledged, it is mutually understood and agreed that this agreement is cancelled, terminated and discharged. (Signed) Robert W. Clark, contractor, I. G. Simons."

In relation to the transaction just referred to, the trial court found as follows: "That on or about the 13th day of August, 1924, the said Isaac G. Simons transferred and conveyed said real property above described to the said Robert W. Clark under the agreement and understanding between said parties that the said Robert W. Clark should complete said building, but after the completion thereof, said property should be sold. That out of the proceeds of said sale Robert W. Clark should first receive and be paid the full amount of his contract, and that any balance

thereof then remaining should be given and paid to the said Isaac G. Simons." The cancellation of the contract, as shown by the above writing, was also found by the court, but in relation thereto the court found as follows: "That none of the plaintiffs above named had any knowledge or information concerning the transfer or conveyance of said property to said Robert W. Clark or the termination of said building contract prior to the completion of said building, as aforesaid, but at all times prior to the completion of said building, said plaintiffs thought and believed that the said Robert W. Clark was constructing said building as contractor, under and pursuant to the terms of said building contract described in paragraph III hereof."

The record shows that the property was sold on or about the twenty-sixth day of June, 1925, under the second trust deed hereinbefore referred to, which deed was prior in right to the mechanics' liens owned by the respective plaintiffs, and judgment therefor was entered against the Surety Company for the amount of the liens and foreclosure upon the property denied.

The appellant strongly urges that the evidence is insufficient to sustain the finding of the court which we have quoted herein to the effect that there was an understanding between Clark and Simons relative to the completion of the building that the building should be sold and out of the proceeds the contractor was to receive his contract price, and the owner whatever balance should remain. The contractor, Robert W. Clark, called as a witness under the terms of section 2055 of the Code of Civil Procedure, testified upon direct examination as follows: "I started work upon the construction of the building, and about the time the roof was on Simons informed me that it would be impossible for him to pay me the money that would be due under the contract. . . . We simply agreed that inasmuch as he, Simons, did not have the money to pay me on the contract, that this agreement was made in order to see if it would be possible it might work out. These transfers were made to secure me as to my contract price. Over and above the contract price, he was to get any proceeds of the sale." Upon cross-examination by counsel for the appellant herein, this witness modified his testimony to some extent and testified as follows: "I gave Simons the third

trust deed for $17,500.00, an agreement to that effect, or a statement to the effect that I would finish the things as suc-cessfully as possible and sell it; that I was to receive my full contract price. Then he was to receive what balance there might be up to the $17,500.00, and that I was to receive all the balance if there was any." Upon redirect examination, referring to a deposition theretofore given by the witness, the witness testified: "I testified that there was a separate agreement to the effect that if the building were disposed of for a sufficient amount to give me my full payment of the contract, Simons was to get all over and above that money. I gave Simons a third trust deed for $17,500 on the premises, which was the amount we agreed as being the value of the lot, and incidentally, a separate agreement to the effect that if the building were disposed of for a sufficient amount to give me my full payment of the contract, Simons was to get all over and above that money." Again, the record shows that upon examination by counsel for appellant, the witness gave a different version of the transaction and testified that Simons was to get only $17,500, and he, the witness, was to get his contract price and also all over and above the $17,500. Our attention has not been called to the testimony of any other witness relative to this transaction, and as the trial court had the benefit of the witness Clark appearing before him, and being able to judge of the manner in which he testified, just what was the correct version was and is distinctly a matter for the trial court, and if the trial court believed the version given by the witness under his direct examination conducted under the provisions of section 2055 of the Code of Civil Procedure, the finding of the trial court is sufficient to support it and cannot be disturbed on appeal.

Again, the finding of the court that none of the laborers or materialmen knew of the so-called cancellation clause indorsed upon the contract is challenged by the appellant. Here, again, the testimony is in conflict. The witness Clark testified that he notified the laborers and materialmen; his testimony in this particular is contradicted by a number of witnesses. The court resolved this conflict in favor of the lien claimants, and being based upon conflicting evidence, must be accepted as correct.

■ The main reliance of appellant is based upon section 2836 of the Civil Code, which reads in part as follows: "A surety cannot be held beyond the express terms of his contract," and quotes to some extent from the cases of *Alexander* v. *Bosworth*, 26 Cal. App. 589 [147 Pac. 607]; *County of San Luis Obispo* v. *Ryal*, 175 Cal. 34 [165 Pac. 1]; *Turner* v. *Fidelity & Trust Co. of Maryland*, 187 Cal. 76 [200 Pac. 959]; *Roberts* v. *Security Trust & Savings Bank*, 196 Cal. 557 [238 Pac. 673]; and also some other cases in which it is held that a surety is not bound by a contract that he has not made or authorized. All of these cases we have examined and find that they state the law just as insisted upon by appellant, but are not governing in this case by reason of the code provisions relating to building contracts and the conditions and stipulations contained in the bond executed by the Eagle Indemnity Company. Section 1183 of the Code of Civil Procedure contains, among others, the following provision: "No change or alteration of the work or modification of any such contract between the owner and his contractor shall release or exonerate any surety or sureties upon any bond given under this section." The bond executed by the appellant runs not only in favor of the owner of the premises, but runs in favor of anyone who should perform labor upon the building being constructed, or furnish materials for the construction of the building mentioned in the contract. The words of the bond are as follows: "That this bond shall inure to the benefit of any and all persons who perform labor upon, or furnish materials to be used in the work described in said contract so as to give such persons a right of action upon this bond, upon any suit brought to foreclose the liens provided for by the laws of the State of California, or in a separate suit upon this bond." There is no question in this case but that everything mentioned in the mechanics' liens went into the building described in the contract. That the transaction had between Clark and Simons did not release the Eagle Indemnity Company, see the well-considered opinion in the case of *Hubbard* v. *Jurian*, 35 Cal. App. 757 [170 Pac. 1093]. We quote from that opinion as follows: "It is the rule generally that a surety has a right to stand upon his contract of suretyship, and that he will be exonerated to the extent that he has been prejudiced by any

violation of the covenants of the contract, but we are forced to the conclusion that this general rule cannot be made to apply to the contract of suretyship in suit here. And this is so, we think, because of the facts that the bond in question is executed pursuant and in obedience to the requirements of the statute which, although it permits such a bond to contain conditions in the performance of the contract, nevertheless also expressly provides that no modification of any contract between the owner and his contractors shall release or exonerate any surety upon any bond given under this section (Code Civ. Proc., sec. 1183).'' The same question was before the supreme court in the case of *Hub Hardware Co.* v. *Aetna Accident & Liability Co.*, 178 Cal. 264 [173 Pac. 81], where it was held that the provisions of section 1183 of the Code of Civil Procedure enter into every surety bond given to insure the performance of a building contract. The language of the court there used, is as follows: ''The bond itself specifies that the principal and surety are held and firmly bound unto any and all persons, companies or corporations who perform labor or furnish materials to be used in the said work or improvement aforementioned, in the sum of $17,500. Statutes upholding liability inuring to the benefit of those with whom the present bond has no contractual relation, have been repeatedly sustained. If the surety makes the contract with the law before him, the law enters into and becomes a part of the agreement.'' (Citing *Jones* v. *Great Southern Fireproof Hotel Co.*, 86 Fed. 370 [30 C. C. A. 108]; *Hollenbeck Bush Planing Mill Co.* v. *Amweg*, 177 Cal. 159 [170 Pac. 148].) In the case at bar, just as in the *Hub Hardware Co., supra*, the surety bound itself to pay for any materials furnished to be used, and used in the described work. · In other words, the surety contracted to pay for the materials that went into the work, and not whether Simons or Clark claimed to be the owner of the structure when it was completed.

It is further insisted that the recording of the transfer from Simons to Clark, and the execution of the trust deed by Clark in favor of Simons was notice to the lien claimants. We do not well see how this would in anywise release the surety for the payment of the materials that went into the described building. While not expressly so found by the trial court, the transaction was, in effect, one

designed simply to secure the contractor in the payment of the contract price, and as the finding that the so-called cancellation clause written on the contract was not brought home to the lien claimants, we do not find any tenable theory upon which the surety should be relieved from the terms and provisions of the bond executed by it.

The argument of appellant that the cancellation clause attached to the contract after the building had been partly completed, is not covered by the provision of section 1183 of the Code of Civil Procedure, which provides that no modification of a building contract shall work a release of the surety, while certainly ingenious, does not impress us as being outside of what was intended by the legislature. While the word "modification" in its ordinary use would relate only to a limitation or reduction in degree, it would be unreasonable to hold that the legislature intended that after a contract had been partly completed, and laborers had performed work and materialmen had furnished materials, that a cancellation clause attached to the contract and signed by the contractor and owner would relieve the surety and leave the laborers and materialmen remediless, and especially so in a case where knowledge of such cancellation has not been brought home either to the materialmen or to the laborers. Under such circumstances we think the clause quoted from section 1183 of the Code of Civil Procedure applies. Whether the transaction disclosed by the record in this case would work a release of the surety bond as to the beneficial interest of the owner in the property is not necessary for us to decide, as that question is not directly before us. The fact is, however, that the building was erected according to the conditions of the contract, and all the circumstances connected with the case indicate that the arrangement entered into between the contractor and the owner was simply for the purpose of further securing the contractor in obtaining the contract price agreed upon, and that the beneficial ownership of the property never did pass from the owner to the contractor. Again, we think the law does not require a laborer or materialman, after having notice of a contract, to daily examine the files of the county recorder's office to ascertain if the terms of the contract have been changed, modified, or canceled before proceeding

with his labor or delivery of materials. This requirement is the effect of appellant's argument.

The minor points urged for reversal by the appellant have been examined, but do not demand extended consideration herein.

The judgment of the trial court is affirmed.

Hart, J., and Finch, P. J., concurred.