[L. A. No. 12476. In Bank.—October 3, 1933.]

PATTEN & DAVIES LUMBER COMPANY (a Corporation) Respondent, v. LAWRENCE McCONVILLE et al., Appellants.

Kidd, Schell & Delamer, Zach Lamar Cobb and Earl A. Littlejohns for Appellants.

Dana R. Weller for Respondent.

Holbrook, Taylor, Tarr & Horton and Joseph K. Horton, as *Amici Curiae* on Behalf of Respondent.

CURTIS, J.—The following statement of facts is taken from the opinion rendered in this action by the District Court of Appeal:

"This is an action brought against the contractors and the surety on a bond furnished by them, to recover for materials used in the erection of an apartment house. The complaint alleged that materials of the value of $31,282.61 were furnished between May 1, 1927, and September 27, 1927, in pursuance of a contract between the plaintiff and the defendant contractors; that the defendant contractors agreed to pay for the same; that only the sum of $3,138.37 has been paid; and that the balance unpaid is $28,144.24. It was also alleged that the defendant surety company entered into a bond or undertaking conditioned for the payment of labor and material claims which by its terms was made to inure to the benefit of labor and material claimants. The defendant surety company answered, denying all of the allegations of the complaint which are material here, and setting up several separate defenses, including one to the effect that the bond had been issued in connection with a contract providing for the erection of a building upon certain terms, while the building had been erected under another and different contract, and upon completely changed terms. As another defense, it was alleged that the entire transaction had been fraudulent, that the owner and contractors after entering into one form of agreement had later pretended to enter into another form of agreement for the purpose of obtaining a bond from this defendant, and that, thereafter, they had returned to the original form of agreement and proceeded in accordance therewith, all without the knowledge or consent of this defendant.

"Four findings were made by the trial court. In finding number one it was found that the contractors ordered the materials as alleged in the complaint and agreed to pay for the same; that they were furnished for and used in the construction of the building; that their agreed value was $31,282.61; and that the balance due and unpaid was $28,144.24. In number two it was found that the defendant surety company entered into an undertaking conditioned upon the payment by the defendant contractors for all materials used in the erection of said building, and that this undertaking was by its terms made to inure to the benefit of all persons furnishing such materials. Finding number three is to the effect that while the defendant contractors had delivered to the plaintiff their promissory note in the sum of $37,500, this note was not delivered nor accepted in payment for materials to be delivered and did not estop the plaintiff from recovering in this suit. In finding number four it was found that all of the allegations of the defendant surety company's second, third and fourth separate defenses are untrue. Judgment was entered against the defendant contractors and against the defendant surety company, from which judgment both have appealed."

The findings of the court having been in favor of the plaintiff, the evidence must be construed most strongly against the appellant and in favor of the respondent. All evidence tending to establish the correctness of the findings as made must be accepted as true and the prevailing party must be given the benefit of all inferences which might reasonably have been drawn by the trial court. Every substantial conflict in the evidence must, under the rule which has always prevailed in this court, be resolved in favor of the finding. (*Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140, 142 [134 Pac. 1157].) Reviewing the evidence in the light of this well-established rule, the facts in this case may be fairly stated as follows: S. E. Bancroft was the owner of a certain piece of real property upon which she desired to erect an apartment house, and throughout this transaction her husband, Dr. Bancroft, acted for her under a written power of attorney. The Bancrofts had previously had dealings with the defendants McConville and Perryman, who were contract builders, and they desired this firm to erect the apartment house which they then had decided to build.

Some preliminary negotiations were had between the Bancrofts and these contractors regarding the construction of said apartment house upon a cost plus basis. While there may have been a vague understanding between the parties that the building might be constructed under such a contract, the trial court found upon evidence which we think was amply sufficient, that no such contract was at that time entered into between the Bancrofts and said contractors. While these parties had the matter of constructing said building under consideration, they called upon a Mr. Casebeer, a bond and insurance broker, to inquire regarding a contractor's labor and material bond in connection with the construction of said building, and were informed by Mr. Casebeer that no such bond could be obtained where the building was constructed on a cost plus basis, and in order to obtain such a bond it would be necessary for them to enter into a contract for the construction of said building at a fixed price. This conference with Casebeer took place on March 5, 1927. A second meeting was held with him on March 7th or 8th, at which Dr. Bancroft and Mr. McConville were present. At this meeting Mr. Casebeer secured for them the information necessary for "the underwriting of the labor and material bond", such as the money available for the construction of the building, the methods of payment and the incidental expenses. He asked Bancroft and McConville for the contract but it had not yet been drawn up. Later he was asked by them to prepare such a contract for the construction of the building, which they executed on March 10th. This was a straight builder's contract for a specific price of $100,000. Casebeer then took up with the Globe Indemnity Company the application of McConville and Perryman for a labor and material bond, and the bond involved herein was on March 18th, issued by the Globe Indemnity Company and delivered by Casebeer to Patten & Davies Lumber Company, the plaintiff herein. Prior, however, to this last-named date, Dr. Bancroft and said contractors had approached the plaintiff regarding the furnishing of lumber and other building material for the construction of said building. The result of their negotiations with the plaintiff was that the plaintiff agreed to furnish said building materials to the extent of $37,500 upon the condition that the contractors would furnish a

labor and material bond which would guarantee payment of said materials and that plaintiff would be further secured by a promissory note in the sum of $37,500, executed by McConville and Perryman and Mrs. Bancroft and secured by an assignment of a promissory note for $60,000 executed by Dr. Bancroft and wife to McConville and Perryman and secured by a trust deed on said real property. There was a prior trust deed on said property given to secure the sum of $100,000. These terms were agreed to by the Bancrofts and McConville and Perryman and in accordance with this agreement the labor and material bond, involved herein, was delivered to plaintiff, as stated above, on or about March 18, 1927. Later the $37,500 promissory note in favor of plaintiff was executed by said contractors and Mrs. Bancroft, and one Max Royer, and the $60,000 note in favor of said contractors and said trust deed to secure said last-named note were also executed by Dr. and Mrs. Bancroft in favor of said contractors. These instruments all bore date March 25, 1927, and were subsequently delivered to the plaintiff. Thereafter the plaintiff furnished the lumber and other building material, which are the subject of this action, and which were actually used in the construction of said building. The contractors commenced the construction of said building under the terms of said builder's contract. In excavating for the foundation of said building they encountered quicksand and were fearful regarding the two adjoining apartment houses. To state it in the words of Dr. Bancroft, "We hit quicksand and thought the two apartment houses adjoining were going to cave in." As a result of this discovery of quicksand the contractors became worried and, in the words of Dr. Bancroft, McConville said: "That contract was liable to wreck us." As to what was then done we quote Dr. Bancroft's testimony as follows: "I said I would be glad to help them out if I could, and we sat down and tried to figure it out together. I thought we had a right to sign some other contract. This is the first building experience I ever had, and we drew up another agreement on a cost plus basis." This contract was dated April 29, 1927, and the evidence shows that it was actually executed at about that date and that this was about two weeks after the work on said building had commenced. It is not clear when the plaintiff began delivering material

on this job. Evidently some of it was delivered before the cost plus contract was executed, but it is apparent that by far the larger part of said materials was delivered after April 29, 1927, the date of said last-mentioned contract. The building, though never entirely completed by the contractors, was, to the extent that it was constructed, built in accordance with the original plans of the parties. While the manner and terms of payment for the construction of the building were changed by the contractors and the owner, the plan of the structure remained unchanged and was carried out by the contractors. The land upon which the building was constructed was, as we have already seen, subject to a first deed given to secure a promissory note for $100,000. The money raised by this means was used to pay, at least in part, for the construction of said building. This fact appears to be stressed by neither of the parties hereto, and no particular importance is placed by either of them upon that circumstance. Plaintiff's claim, as stated above, was never paid. Nor did plaintiff, in so far as the records show, take any steps to realize upon the $37,500 note secured by an assignment of the $60,000 note and trust deed. Possibly the first trust deed was foreclosed and the security given plaintiff was wiped out by such foreclosure proceedings. This is only a surmise, however, as the record does not disclose any facts supporting such a conclusion. At any rate this fact is not material.

The present controversy is directly and solely between the plaintiff as a materialman and the contractors and their sureties, the Globe Indemnity Company.

▪ The only claim made by the contractors against the demand of the plaintiff is that the $37,500 note, secured as above stated by the assignment of the $60,000 promissory note and trust deed was given by the contractors and accepted by the plaintiff as payment for the materials covered by plaintiff's claim. While there is direct evidence to support the contractors in this contention, there is equally positive and persuasive evidence to the contrary. This was one of the contested issues at the trial and, as the trial court resolved this conflict in the evidence upon this point in favor of the plaintiff, it is not within the province of this court to disturb that finding, even if we were so inclined. As we read the evidence, however, it appears to us that the

great weight thereof is in favor of the plaintiff. It seems unlikely that the officers of plaintiff, who are evidently experienced business men, would accept in payment of plaintiff's claim for materials furnished for the construction of said building, a second lien upon the land upon which said building was being erected. That they did not do so is confirmed by the uncontradicted evidence that they refused to deal with the contractors or with Dr. Bancroft, who represented the owner, and refused to furnish any material for said job unless the parties procured a surety bond which would inure to the benefit of persons furnishing labor and materials for the construction of said building. The question naturally arises, if plaintiff had accepted payment of its claim for materials which it had agreed to furnish to the contractors, why would it concern itself regarding a bond to secure the payment of these same materials? There can be no logical answer to this question. We are satisfied that there is no merit in the appeal by the contractors, McConville and Perryman.

The appellant, the Globe Indemnity Company, also relies upon the claim that the plaintiff in accepting the securities it did accepted them in payment of said materials. No further consideration need be given to this claim in addition to that already stated in connection with the appeal of the contractors.

Said appellant further contends that the evidence is insufficient to sustain the findings of the court as to the defense set up in its answer that the entire transaction between the owner and contractors for the construction of said building was fraudulent in that they first entered into a cost plus contract, and after finding that they could not procure a labor and material bond for a contract of that character, pretended to enter into a contract for the construction of said building at a fixed price under which they secured the bond from said surety appellant and thereafter they returned to the original cost plus contract for the construction of said building. The gist of this defense was the alleged fraud of the owner and contractors in procuring said bond from the surety company under the circumstances alleged. This matter was gone into most thoroughly by the trial court. All the parties to the transaction were called as witnesses and examined and cross-examined by counsel

for the respective parties hereto, and at the conclusion of the trial the court found that no fraud had been committed against the appellant surety company. As we review the testimony we fail to find any substantial evidence that the parties in the first instance entered into any cost plus contract. They had discussed such a contract, and were inclined to favor that method of constructing the building. But no contract, written or oral, was ever agreed to by the parties before the bond was executed and delivered that the building would be constructed on a cost plus basis. After calling upon the plaintiff, and being informed by its officers that plaintiff would not furnish any materials for the building unless a labor and material bond was given, Dr. Bancroft and the contractors then discussed and finally agreed upon a contract for the construction of the building for a fixed price. Under this contract the bond was given and the parties began the erection of the building, or, at least, made preparations therefor by excavating for its foundation. The manner in which they came to change back to a cost plus contract has already been narrated in the language of Dr. Bancroft in a previous part of this opinion. We are in entire agreement with the trial court in its conclusion that there was no proof of fraud in the transactions between the owner and the contractors. Whether the materialmen may recover from their surety under this state of facts is another question. We are now dealing only with the claim that the parties acted fraudulently and for that reason the surety was never bound by its undertaking under the bond. The trial court having found against such a claim upon evidence before it which failed to substantiate the allegations of fraud, its findings, of course, must stand.

■ It is next contended by the surety that it was released by plaintiff when it accepted from the contractors the promissory note for $60,000, and trust deed, as security for its claim for materials to be furnished. This promissory note and trust deed for $60,000 was given by the owner to the contractors in part payment of said sum of $100,000, the contract price of said building. This contract provided that the contract price of said building should be paid in seven payments of $14,285.72 each, payable as the work of constructing said building progressed. The execution and delivery of said promissory note and trust deed to the con-

tractors, it is claimed, was a premature payment by the owner to the contractors and released the surety from its obligations under said bond, and when the plaintiff accepted said note and trust deed as security for its claim, the surety was thereby released from its obligation to the plaintiff. The bond involved herein was given in accordance with the requirements of section 1183 of the Code of Civil Procedure, which provides, among other things, that: "No change or alteration of the work or modification of any such contract between the owner and his contractor, . . . shall release or exonerate any surety or sureties upon any bond given under this section."

A premature payment is in effect nothing more nor less than a modification of the terms of the contract, and consequently will not avail, in the face of the inhibition contained in said section 1183 of the Code of Civil Procedure as against persons furnishing materials under said contract, to defeat the bond. (*Hubbard* v. *Jurian,* 35 Cal. App. 757, 769 [170 Pac. 1093].) There is some question whether the plaintiff knew, when it accepted said security, of the terms of the contract providing for the payment of the contract price in seven equal installments. There is evidence of the officers and employees of plaintiff, who had charge of this matter for plaintiff, that they never saw the contract and did not know its contents. While the bond was given to the plaintiff, the contract was not. The contract was referred to in the bond, but was not made a part thereof. Assuming that plaintiff had constructive notice of the terms of the contract, and that is the extreme limit to which the evidence will permit us to go, yet its acceptance of this security, if we hold it to be a premature payment, does not necessarily exonerate the surety. In *Howe* v. *Schmidt,* 151 Cal. 436, 441 [90 Pac. 1056, 1058], this court said: "That contract is subject to change and modification in such matters by the parties thereto, the owner and the contractor, without notice to other parties, and the materialman has the right to assume that no fraud is being perpetrated by the contractor upon the owner in the use of materials ordered." Applying this principle to the facts in the present case, it would seem that the plaintiff, even if it had actual notice of the terms of the original contract regarding the payment of the contract price, had the right to assume

that they had been changed so as to permit the giving of said promissory note and trust deed for $60,000. This was especially true when both the owner and contractors were parties to the transaction whereby the plaintiff acquired said securities.

 The final contention of the appellant surety company is that it is exonerated from all liability by reason of the fact that the contract for the construction of said building was changed from a contract to construct said building for a definite fixed sum to what is known as a cost plus contract. That this change was made, there can be no question from the evidence in the case. It is equally clear from the evidence that plaintiff knew nothing of said change but furnished said materials for the building which was constructed as originally contemplated by the parties, though the manner of payment was radically different.

In support of its contention that this change in the terms of the contract between the owner and the contractors released the surety of its obligations under its bond to the plaintiff and other materialmen, the Globe Indemnity Company has cited some sixteen cases. These cases all involve the liability of a surety to a party to the contract on a bond given to secure the payment or performance of said contract, and none of them relates to the liability of a surety to a materialman on a bond given under section 1183 of the Code of Civil Procedure. Among these cases cited by said appellant are *County of Glenn* v. *Jones,* 146 Cal. 518 [80 Pac. 695] (instituted by the County of Glenn to recover on a bond given to secure the faithful performance of a contract between said county and one Jones for the erection of a high school building); *Kiessig* v. *Allspaugh,* 91 Cal. 231 [27 Pac. 655, 13 A. L. R. 418] (an action by the owner against a surety on a bond given to indemnify and save harmless the owner against claims for labor and materials); *Tally* v. *Parsons,* 131 Cal. 516 [63 Pac. 833] (likewise an action by the owner against the sureties on a bond given to secure the faithful performance of a building contract); *First Congregational Church of Christ* v. *Lowrey,* 175 Cal. 124 [165 Pac. 440] (action brought by owner against surety on bond for the faithful performance of building contract). All the other twelve cases are of the same character. The case of *Roberts* v. *Security Trust & Savings Bank,* 196 Cal.

557, 564 [238 Pac. 673], cited and relied upon by appellant in its answer to respondent's petition for a hearing in this court, while involving the rights of materialmen on a builder's bond which inured to the benefit of laborers and materialmen, also involved the rights of the owner against the contractor and his sureties, and the quotation taken from the opinion in that case by the Globe Indemnity Company in said answer was from that portion of said opinion dealing with the controversy between the contractor and his sureties, and had no reference whatever to the rights of the materialmen against the sureties. These authorities, while they correctly define the ordinary liability of a surety, are not applicable to, nor do they in anywise control, the principles of law governing the liability of a surety to a materialman or laborer on a bond given under section 1183 of the Code of Civil Procedure. The authorities cited by said appellant announce the well and long established principle of law that when the bond or undertaking is to assume the performance of an existing contract, if any change is made in its requirements in matters of substance without the consent of the surety, the surety is exonerated from liability. (*Roberts* v. *Security Trust & Savings Bank, supra.*) But this rule has been radically changed, at least as to the rights of laborers and materialmen, under a builder's bond which inures to their benefit, by the provisions of section 1183 of the Code of Civil Procedure. It is there declared that no change or alteration of the work or modification of the contract between the owner and the contractor shall release or exonerate any surety upon any bond given under that section. The effect of this section of the code upon the general rule applicable to the obligation of a surety was pointed out by the District Court of Appeal in the case of *Hubbard* v. *Jurian,* 35 Cal. App. 757, 769 [170 Pac. 1093, 1098], in the following language: "It is the rule generally that a surety has the right to stand upon the terms of his contract of suretyship, and that he will be exonerated to the extent that he has been prejudiced by any violation of the covenants of the contract, but we are forced to the conclusion that this general rule cannot be made to apply to the contract of suretyship in suit here. And this is so, we think, because of the fact that the bond in question was executed pursuant and in obedience to the requirements of a statute which,

although it permits such a bond to contain conditions for the performance of the contract, nevertheless also expressly provides that 'no . . . modification of any . . . contract between the owner and his contractors shall release or exonerate any surety . . . upon any bond given under this section'. (Code Civ. Proc., sec. 1183.)''

In that case it was held that, although the parties to a builder's contract had departed from its terms by the owner making and the contractor receiving advance or premature payments on the contract, which money the contractor used, not to pay for labor or materials used in the construction of the building, but to pay his own personal debts, the rights of the laborers or materialmen under the bond given under section 1183 of the Code of Civil Procedure were not thereby impaired or affected.

In a later case, *Western Brick Co.* v. *Smith,* 94 Cal. App. 370, 377 [271 Pac. 356, 359], the court held that a cancellation of a contract between the owner and contractor did not release the surety. The court in that case so holds in the following language: "The argument of appellant that the cancellation clause attached to the contract after the building had been partly completed, is not covered by the provision of section 1183 of the Code of Civil Procedure, which provides that no modification of a building contract shall work a release of the surety, while certainly ingenious, does not impress us as being outside of what was intended by the legislature. While the word 'modification' in its ordinary use would relate only to a limitation or reduction in degree, it would be unreasonable to hold that the legislature intended that after a contract had been partly completed, and laborers had performed work and materialmen had furnished materials, that a cancellation clause attached to the contract and signed by the contractor and owner would relieve the surety and leave the laborers and materialmen remediless, and especially so in a case where knowledge of such cancellation has not been brought home either to the materialmen or to the laborers. Under such circumstances we think the clause quoted from section 1183 of the Code of Civil Procedure applies." Similar rulings will be found in the cases of *Hub Hardware Co.* v. *Aetna Acc. etc. Co.,* 178 Cal. 264, 267 [173 Pac. 81], and *Los Angeles Stone Co.* v. *National Surety Co.,* 178 Cal. 247 [173 Pac. 79]. In this

latter case, the court (page 250) said: "Hence the question as to whether the contract under which the work is done be a valid one or whether the contractor fails to perform it according to its terms and specifications entitling him to an acceptance of the same as completed is no concern of the persons furnishing materials for the work. Unaffected by irregularities in the procedure or defects which render the contract void, the materialmen may look to the covenant of the surety, which, in effect, is an express promise in case of failure so to do by the principal to pay any and all debts of the contractor in so far as they are incurred for labor and materials furnished in performing the work."

These cases clearly hold under the rule as modified by section 1183 of the Code of Civil Procedure that the surety is not released from its obligation to materialmen by a material change in the contract between the owner and the contractor. In this case the materialman undertook to and did furnish building materials for the construction of said building. The surety agreed in case the contractors did not pay for said materials that it, the surety, would pay for them. This obligation on the part of the surety should not be impaired or destroyed by any act on the part of the owner or contractors over which the materialman had no control and for which it was in no way responsible. Section 1183 of the Code of Civil Procedure was no doubt enacted for the very purpose of protecting materialmen and laborers under such conditions. We are, therefore, of the opinion that the obligation of the surety to the plaintiff was in no way affected by the subsequent change in the terms of the contract whereby the cost of the building was to be paid for, not at a fixed price but on a cost plus basis.

We do not find it necessary to discuss other matters considered in the briefs of the parties, as those we have considered constitute the main points of controversy between said parties.

The judgment is affirmed.

Thompson, J., Shenk, J., Langdon, J., Preston, J., Seawell, J., and Waste, C. J., concurred.

Rehearing denied.